FIFTH DIVISION

1-08-0383

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | 06 CR 27445 |
| | ) | |
| DANIEL VARGAS, | ) | The Honorable |
| | ) | Thomas P. Fecarotta, |
| Defendant-Appellant. | ) | Judge Presiding |
| | ) | |

PRESIDING JUSTICE TOOMIN delivered the opinion of the court:

In this case, we must consider whether the trial judge gave adequate attention to a *pro se* defendant's posttrial claim of ineffective assistance of counsel. Following a jury trial, defendant, Daniel Vargas, was found guilty of first degree murder, attempted first degree murder, and aggravated discharge of a firearm and ultimately sentenced to concurrent terms of 50, 26, and 6 years' imprisonment. On appeal, he contends: (1) the trial court's examination of the venire was insufficient; (2) the State's closing argument was improper; (3) his *pro se* allegations of ineffective assistance of counsel were not adequately addressed; (4) his conviction for aggravated discharge of a firearm violated the one-act, one-crime rule; and (5) improper fines were assessed against him. The State concedes: (1) that the conviction for aggravated discharge of a firearm violates the one-act, one-crime rule; and (2) that certain of the fines imposed were improper. For the reasons herein, we remand with directions.

## BACKGROUND

The events giving rise to defendant's prosecution occurred on November 5, 2006, in Streamwood, Illinois, when Anthony (Tony) Brown was fatally shot. Defendant, along with David Luna – who is not a party to this appeal – were subsequently charged with first degree murder, attempted murder, and aggravated discharge of a firearm. As no challenge is made as to the sufficiency of the evidence, we describe those facts necessary for a general understanding.

The trial evidence disclosed that on November 5, 2006, Luna sought to purchase one-half pound of marijuana from Joseph Benitez for $2,000. Defendant drove to the meeting with Joseph accompanied by Luna, a woman, and defendant's baby. Joseph rode with them to a parking lot in Schaumburg where Luna gave him money for the marijuana. Joseph exited the car and walked to where he said he was to meet another man to get the marijuana, but the person was not there. Joseph counted the money and discovered there was only $1,350. Joseph then walked into a grocery store, called a cab, and returned to his home, arriving shortly after 7 p.m. Thereafter, Luna called Joseph and was told the money for the purchase was short and that Luna would have to wait 15 to 20 minutes or until the following day to get the marijuana.

Around 9 p.m., Joseph was in his yard with his friend Tony Brown when defendant and Luna arrived. Tony knew generally about the situation between Joseph, Luna, and defendant. Michael Benitez, Joseph's brother, answered the door. Joseph saw defendant and Luna in the driveway adjacent to the garage. Joseph asked Luna to wait 15 to 20 minutes for his mother to go to sleep so she would not hear what Joseph was doing. Joseph planned to return the $1,350.

Joseph approached defendant and Luna with Tony following, and defendant pointed a

gun at Joseph and demanded his money, but ultimately put the gun down. When defendant pulled the gun on Joseph, Tony alerted Michael to the situation and Michael came out of the house indicating that he would go get what defendant wanted. Defendant responded, "No one is going inside."

Defendant then attempted to run into the house, but Tony grabbed him and tried to prevent defendant's entry and, as he did, defendant drew the gun and shot Tony from less than one foot away. Tony was struck in the chest and stumbled to the side and was shot again, this time in the back. Defendant shot Tony a third time and ran out of the garage. Joseph denied that Tony ever struck defendant and maintained that Tony only tried to block defendant's entry. Michael, however, testified that Tony struck defendant on the side of the face as defendant "stepped up" after Tony tried to grab defendant or put him in a bear hug.

As Joseph checked on Tony's condition, he heard two additional shots fired outside the garage. Those shots were fired at Michael, who chased after defendant. According to Michael, he heard four shots in the garage. Then, defendant ran out of the garage, threatened to kill Michael, and fired a shot past Michael's his head from a distance of about four feet. Luna and defendant then drove off.

Defendant was ultimately arrested and agreed to speak to investigators. He engaged in a conversation that was memorialized on videotape and shown, in relevant part, to the jury that substantially corroborated the eyewitness testimony. Defendant did not testify.

Following arguments and instructions, the jury found defendant guilty. He was subsequently sentenced to concurrent terms of imprisonment of 50 years for first degree murder,

1-08-0383

26 years for attempted murder, and 6 years for aggravated discharge of a firearm[1]. Defendant now appeals.

ANALYSIS

As noted, defendant does not challenge the sufficiency of the evidence. His first two claims of error relate to the trial judge's questioning of the venire during jury selection and the State's closing argument. Defendant did not object to either contemporaneously. Moreover, only his complaint as to the closing argument was specifically included in his posttrial motion. Consequently, the State contends these claims are forfeited.

It is axiomatic that in order to preserve issues for review a defendant must object at the time of the claimed error as well as in a posttrial motion. *People v. Lewis*, 234 Ill. 2d 32, 40, 912 N.E.2d 1220, 1225 (2009); see also 725 ILCS 5/116-1 (West 2006). The failure to do so will generally result in forfeiture of the claim on appeal; however, forfeiture is not an absolute bar to our review. Precedent dictates that the rules of forfeiture present limitations on the parties and not on the reviewing court. *People v. Davis*, 213 Ill. 2d 459, 470, 821 N.E.2d 1154, 1161 (2004).

Additionally, Supreme Court Rule 615(a), known as the "plain-error" doctrine, carves out an exception to permit review of issues otherwise procedurally defaulted. *Lewis*, 234 Ill. 2d at 42, 912 N.E.2d at 1226-27; 134 Ill. 2d R. 615(a). Our supreme court described its operation in *People v. Piatkowski*:

---

[1] Notably, the sentence for aggravated discharge of a firearm is included in the written sentencing order. Curiously, it is nowhere mentioned in the sentencing transcript.

"[T]he plain-error doctrine allows a reviewing court to consider unpreserved error when (1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the serousness of the error, or (2) a clear or obvious error occurs and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565, 870 N.E.2d 403, 411 (2007), citing *People v. Herron*, 215 Ill. 2d 167, 186-87, 830 N.E.2d 467, 479 (2005).

Importantly, "plain error is not limited to cases where the putative error causes the conviction of an innocent person; it also applies to cases where the putative error affects the fairness or integrity of the trial." *Herron*, 215 Ill. 2d at 186, 830 N.E.2d at 479.

Rule 615 specifically provides that, "Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." 134 Ill. 2d R. 615(a). "Essentially, the fairness of the trial must be undermined." *People v. Keene*, 169 Ill. 2d 1, 17, 660 N.E.2d 901, 910 (1995). Defendants bear the burden of persuasion under each prong of the doctrine. *People v. Naylor*, 229 Ill. 2d 584, 593, 893 N.E.2d 653, 659 (2008). Where a defendant is unable to establish plain error, it is incumbent upon us to honor the procedural default. *Keene*, 169 Ill. 2d at 17, 660 N.E.2d at 910.

Necessarily, we must first determine whether an error actually occurred. *Lewis*, 234 Ill. 2d at 43, 912 N.E.2d at 1227, citing *People v. Walker*, 232 Ill. 2d 113, 124, 902 N.E.2d 691, 697 (2009). We, therefore, consider the substance of each of defendant's claims of error. *Walker*,

232 Ill. 2d at 125, 902 N.E.2d at 697; *Lewis*, 234 Ill. 2d at 43, 912 N.E.2d at 1227.

Defendant first asserts that the trial court erred in its questioning of potential jurors pursuant to Supreme Court Rule 431(b) (Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007), the so-called *Zehr* principles. See *People v. Zehr*, 103 Ill. 2d 472, 469 N.E.2d 1062 (1984). Specifically, defendant contends the trial court's approach was insufficient as to the fourth principle, namely, that a defendant's choice not to testify could not held against him. According to defendant, this deficiency was especially prejudicial in light of his claim of self-defense.

As noted, defendant did not object during *voir dire* and did not object to the trial judge's methodology in his posttrial motion. Mindful of the forfeiture considerations discussed previously and taking into account the practical considerations of objecting to a judge's conduct, our forfeiture analysis diverges from our earlier observations. See *People v. Sprinkle*, 27 Ill. 2d 398, 189 N.E.2d 295 (1963) (recognizing the practical difficulties of contemporaneous objections to a trial judge's conduct); *People v. Sims*, 192 Ill. 2d 592, 736 N.E.2d 1048 (2000) (same, relying on *Sprinkle* analysis). *Sprinkle* and *Sims* guide us that "we will not rigidly apply the waiver rule" under these circumstances. *People v. Woolley*, 205 Ill. 2d 296, 302, 793 N.E.2d 519, 522 (2002); *People v. Vaughn*, 354 Ill. App. 3d 917, 926, 821 N.E.2d 746, 754 (2004) (less rigid application of waiver rule for claims of potential judicial misconduct), citing *People v. Davis*, 185 Ill. 2d 317, 343, 706 N.E.2d 473, 485 (1998), and *People v. Williams*, 173 Ill. 2d 48, 85, 670 N.E.2d 638, 656 (1996). Therefore, we consider defendant's claim on its merits.

As this claim calls upon us to construe a supreme court rule, our review is *de novo*.

1-08-0383

*Robidoux v. Oliphant*, 201 Ill. 2d 324, 332, 775 N.E.2d 987, 992 (2002). Likewise, we are reminded of the oft-repeated principle that supreme court rules have the force of law, are not aspirational, and should be adhered to as written. See *Bright v. Dicke*, 166 Ill. 2d 204, 210, 652 N.E.2d 275, 277-78 (1995). Nonetheless, the violation of a supreme court rule does not necessarily mandate reversal and application of the harmless error rule is appropriate for use in our assessment. See *People v. Glasper*, No. 103937, slip op. at 12-13 (June 18, 2009). As noted, our initial charge, then, is to determine whether any error occurred.

Rule 431(b) provides as follows:

"(b) The court shall ask each potential juror, individually or in a group, whether that juror understands and accepts the following principles: (1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that the defendant's failure to testify cannot be held against him or her; however, no inquiry of a prospective juror shall be made into the defendant's failure to testify when the defendant objects.

The court's method of inquiry shall provide each juror an opportunity to respond to specific questions concerning the principles set out in this section." Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007.

In the case *sub judice*, the trial court posed the following question the venire during the process of jury selection:

7

> "Do all of you understand and agree with the proposition of our law that the defendant does not have to testify on his own behalf, if he does not wish to; and if he does not, that should not be considered by you in any way in arriving at your verdict? If you will not promise me that, please raise your hand.

> Let the record reflect no one has raised their right hand."

According to defendant:

> "The above comment failed to inform the jury that a defendant's failure to testify cannot be held against him. Thus, the court failed to satisfy either the purpose or the letter of Rule 431(b) before empaneling the jury."

Moreover, claims defendant, this method of questioning "took on special significance" where defendant alternatively sought a second degree murder conviction and would, therefore, have the burden of establishing a mitigating factor by a preponderance of the evidence. We disagree.

Undeniably, all courts are bound to follow the rules promulgated by our supreme court. See *Bright*, 166 Ill. 2d at 210, 652 N.E.2d at 277-78. Furthermore, Rule 431(b) by its plain language clearly mandates inquiry into the four enumerated areas. See *People v. Robinson*, 217 Ill. 2d 43, 54, 838 N.E.2d 930, 936 (2005) ("whether the force of the statutory language is mandatory or permissive, then 'shall' does usually indicate the legislature intended to impose a mandatory obligation"); Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007. The rule does not identify or dictate a particular methodology for establishing the understanding or acceptance of the venire as to those principles.

Importantly, the rule speaks of "principles" instead of questions. Likewise, the rule does

not set out these principles in the form of questions to be posed *in haec verba*. Nor does the rule provide for any "magic words" or "catechism" in order to satisfy its mandate. See *Morgan v. Illinois*, 504 U.S. 719, 729, 119 L. Ed. 2d 492, 503, 112 S. Ct. 2222, 2230 (1992) ("The Constitution, after all, does not dictate a catechism for *voir dire*, but only that the defendant be afforded an impartial jury"). The Supreme Court in *Morgan* further observed: "Even so, part of the guarantee of a defendant's right to an impartial jury is an adequate *voir dire* to identify unqualified jurors." *Morgan*, 504 U.S. at 729, 119 L. Ed. 2d at 503, 112 S. Ct. at 2230, citing *Dennis v. United States*, 339 U.S. 162, 171-72, 94 L. Ed. 734, 743, 70 S. Ct. 519, 523 (1950).

Here, defendant contends the form of inquiry adopted by the trial judge was inadequate to establish the venire's understanding of the principle. According to defendant, the inquiry did not employ the precise language of rule 431(b). In assessing the court's approach, we note that the inquiry can logically be broken down into three distinct parts. The first two components derive from the compound question whether the venire agreed with the principle – notwithstanding the trial court's use of the word "proposition" – about defendant's right not to testify and that his choice to do so "should not be considered by you in any way arriving at your verdict." Third component was the statement, "If you will not promise me that, please raise your hand."

While this might not be the most succinct approach to the inquiry, we nevertheless perceive that it was sufficient to ascertain the understanding and acceptance of the potential jurors of the principle articulated. Manifestly, we believe phrasing it as the trial judge chose to do, prefaced with the concept of agreement, fairly covered both understanding and acceptance. Moreover, soliciting a promise from the prospective jurors of their agreement with this principle

further emphasized the importance of it. By seeking the venire's agreement and soliciting a promise with respect to the matter agreed to, we believe the court sufficiently ascertained whether the venire, individually and collectively, understood and accepted the principle. Therefore, the procedure employed was substantially in accordance with the mandate of Rule 431(b).

As a final point, we note the failure of defense counsel to object to the method or the substance of the inquiry whether openly or at sidebar. Defense counsel, as the keeper and guardian of the theory of defense, should have recognized a problem if one indeed existed. If ascertaining with absolute certainty the understanding and agreement of each member of the venire was vital to defendant's case, there was a time and place for exploring those matters. To claim error at this late hour is, in our view, tantamount to unringing the proverbial bell. As noted, the chime of the bell was not significantly off-key, though not of perfect pitch either. Consequently, we find no error in the trial court's inquiry and further consideration as to forfeiture or harmless error is unnecessary. Therefore, this claim of error is rejected.

Next, defendant contends the State's rebuttal stage of closing argument deprived him of a fair trial through name-calling, injecting the prosecutor's credibility as to defendant's mental state, and distorting the burden of proof for mitigating first degree murder. As noted, no objection to these claimed-of errors was made at trial. Similarly, defendant did not raise these issues with specificity in his motion for a new trial, though he did vaguely assert error based on inflammatory name-calling. Once again, we first consider first whether error occurred during the argument such that defendant can overcome procedural default. *People v. Keene*, 169 Ill. 2d 1,

17, 660 N.E.2d 901, 910 (1995) (procedural default must be honored where plain error is not established).

Our experience teaches that prosecutors are afforded wide latitude to comment on the relevant evidence as well as any fair and reasonable inferences therefrom. *People v. Nicholas*, 218 Ill. 2d 104, 121, 842 N.E.2d 674, 685 (2005). Nevertheless, reversible error may be found in a closing argument where the defendant can establish that but for the particular comment, the verdict would have been different. *People v. Leger*, 149 Ill. 2d 355, 399, 597 N.E.2d 586, 606 (1992); see also *People v. Williams*, 313 Ill. App. 3d 849, 863, 730 N.E.2d 561, 573 (2000) ("improper remarks generally do not constitute reversible error unless they result in substantial prejudice to the accused"). Importantly, a prosecutor's remarks on rebuttal will not be deemed improper where the record reveals they were the product of defense counsel's provocation or invitation. *People v. Kliner*, 185 Ill. 2d 81, 154, 705 N.E.2d 850, 887 (1998)*; Williams*, 313 Ill App. 3d at 863, 730 N.E.2d at 573; *People v. Williams*, 147 Ill. 2d 173, 232, 588 N.E.2d 983, 1005 (1991).

In evaluating these claims we must consider the arguments of each side in context and upon the specific facts of this case. *People v. Bryant*, 94 Ill. 2d 514, 523, 447 N.E.2d 301, 305 (1983); *People v. Bennett*, 304 Ill. App. 3d 69, 72, 710 N.E.2d 445, 447 (1999). When our consideration implicates the legal question of whether a prosecutor's comments warrant a new trial, our review is *de novo*. *People v. Wheeler*, 226 Ill. 2d 92, 121, 871 N.E.2d 728, 744 (2007).

Defendant's claims of inflammatory name-calling stem from the prosecutor's reference to the defendant in rather uncomplimentary terms as a coward, a thief, con artist, and as "weasley

11

[*sic*]", often including the word "little" along with those terms (*e.g.* "little coward," "little thief," and "little drug dealer"). Apart from the "little thief" reference, we discern that each of the other appellations was supported by the evidence or a reasonable inference therefrom (*Nicholas*, 218 Ill. 2d at 121, 842 N.E.2d at 685) or was invited or provoked by the defendant's argument (*Kliner*, 185 Ill. 2d at 154, 705 N.E.2d at 887). We initially observe that the evidence showed that Tony Brown, as well as Michael Benitez, was physically larger than defendant. Defense counsel himself argued that defendant entered "the proverbial lion's den" and two of the individuals present were Tony and Michael, described by counsel as "big guys."

Additionally, defense counsel repeatedly emphasized the theory that defendant's actions stemmed from fear. In turn, the State referred to defendant as a coward. We perceive that the prosecutor's choice of words constituted a fair response to defendant's argument. Cowardice is, in some sense, nothing more than a subset or correlative of fear. A "coward" is defined as "one who shows ignoble fear *** a basely timid, easily frightened, and easily daunted person." Webster's Third New International Dictionary 525 (1993). The argument juxtaposed to this definition persuades us that it was a fair response to the argument defendant's actions were caused by fear.

Moreover, it was wholly consistent with reasonable inferences from the evidence that defendant was angry and upset during the series of events leading up to the shooting. Therefore, inferring that defendant was, in fact, pusillanimous was appropriate as both a theoretical and practical response to defendant's argument. This comment was not in error. Moreover, that the "little thief" comment was not supported by the evidence or responsive to the State's argument

does not alter our analysis as we do not perceive that isolated comment prejudiced defendant in any way.

Defendant likewise argues the prosecutor made an issue of his own credibility during the closing argument twice during the rebuttal. First, the prosecutor explained, "This is a case of rage, folks. This man is livid I guarantee you." Later, the prosecutor stated, "He tried to kill another young boy. Luckily those bullets missed because believe me, that's what he wanted to do to Michael. Believe me." Here again, these comments were clearly, when considered in context, invited responses to defendant's closing argument. They were not in the vein of assurances or suggestions that the jury believe the prosecutor or expressed his opinions. See *People v. Hooper*, 133 Ill. 2d 469, 492, 552 N.E.2d 684, 692 (1989). Instead, they were fair responses to defense counsel's argument. A reference to but a brief portion of defense counsel's argument warrants this conclusion:

> "There was no talking. There was no execution-type *coup de grace* shot. He
> did not chase Anthony Brown through the garage. It happened like that: Pop, pop,
> pop. It also shows you that this was not the result of anger. These shots were fired
> out of fear, pure and simple. Anger, ladies and gentlemen, is: Pow, pow, pow."

Given the nature of the defense argument, the prosecutor's comment takes on a different tenor. While couching his comments with words of belief and guarantee was not the best semantic choice, the spirit of his argument was properly responsive to defense counsel's argument and within the bounds of proper closing argument. See *Kliner*, 185 Ill. 2d at 154, 705 N.E.2d at 887. The prosecutor's comments were no more an expression of personal belief or

13

opinion than defense counsel's onomatopoetic interpretation of the effect of emotion on the sound of gunfire. The prosecutor's comments were clearly invited and were not in error in any event.

Defendant also contends the prosecutor distorted the burden of proof by "suggesting incorrectly that the jury must find that Anthony's use of force against [defendant] was unlawful and that [defendant's] actions were legally justified in order to find in order to find [defendant] guilty of the lesser offense of second degree murder." Moreover, defendant contends that because his argument conceded his lack of justification, the prosecutor's arguments served to mislead the jury. We are not persuaded by this argument. Having reviewed the prosecutor's comments, we are convinced that they were in no way intended to or had the effect of misleading the jury. Notably, defendant concedes the legal accuracy of the State's argument, but contends it was misleading given the context. We are at a loss to discern precisely the meaning of this comment. Moreover, defendant has failed to cite any case law to support this proposition. As such, and in accordance with our supreme court rules, this argument is properly forfeited. 210 Ill. 2d R. 341(h)(7); *People v. Sutton*, 233 Ill. 2d 89, 101, 908 N.E.2d 50, 59 (2009).

Having considered each of defendant's assignments of error as to the State's closing argument, we conclude there was no error. Consequently, defendant's claims are rejected.

Next, defendant contends the trial court erred when it inadequately addressed his *pro se* allegations of ineffective assistance of counsel. This issue initially arose in the early stages of the hearing on defense counsel's posttrial motion. Defense counsel advised the trial judge that defendant asked him "to supplement [the motion] on the record, your Honor, with two additional

allegations, if I may. I have no argument on any of it, Judge." The judge indicated the motion could be supplemented, but it had to be done in writing. The trial judge then inquired further as to the nature of the allegations and defense counsel explained that they related to his performance. The judge responded, "That's not something that you're going to file, is it?" Defense counsel said he was not and further explained that the other allegation related to defendant's previous attorney. Following the explanation, the trial judge stated: "All right. You may proceed on your motion for a new trial. Actually, this is what we're going to do. I want you to prepare your motion." No further comment was made as to defendant's allegations and the trial judge considered each of the allegations in defense counsel's motion.

After the posttrial motion was addressed, the parties moved onto the presentence investigation report (PSI) and those matters relating to the sentencing hearing. Once the necessary changes were made to the PSI, defense counsel addressed the trial judge:

"[Defense counsel]: Judge, my client asked me again just now as you walked out for permission to address your Honor."

THE COURT: He'll have an opportunity to do so.

[Defense counsel]: Okay.

THE COURT: In his elocution [*sic*], absolutely.

[Defense counsel]: Okay.

THE COURT: All right. Aggravation."

Each side then offered arguments in aggravation and mitigation. Then, the following took place:

"THE COURT: Mr. Vargas, is there anything you'd like to say to the

Court? This is your opportunity to address the Court, to help this Court determine what a fair and just sentence would be.

THE DEFENDANT: Your Honor, regarding the issues of the motion, I would like to address the Court and to state it on the record. For the record, your Honor, I would like to state prior to my trial and prior to having Mr. Minkus for his services as defense counsel, Mr. Minkus guaranteed he was to get an obtain records and information I advised --

THE COURT: We can't hear you, sir. You have to speak up.

THE DEFENDANT: Sorry, your Honor. Prior to my trial, Mr. Minkus guaranteed me to get and obtain records and information I advised him was very helpful for my defense strategy. Throughout his services, from the day Mr. Minkus was hired until the day of my trial, on several occasions, I asked for the progress of these records and information by having personal phone calls with Mr. Minkus, leaving messages with his secretary, and by letters, which he subsequently neglected and refused to do against my wishes. Also, I asked Mr. Minkus to review helpful information for motion to litigate --

THE COURT: Slow down. The court reporter has to take it down.

THE DEFENDANT: Sorry. Also, I asked Mr. Minkus to review helpful information for motions to litigate prior to the trial date, which he refused to investigate. Even on December 5th in '06, when asked by the Honorable Judge if there were any motions the Defense would like to submit, Mr. Minkus refused to ask

16

for a continuance to file what I had previously stated to him way before the scheduled trial date and was told, I quote, 'I'm not going to do that. We would look foolish.' Mr. Minkus, obviously, has failed to allow me to help in my own defense. And the only reason why I did not raise up these issues and bring it to the Court's attention sooner was because of my previous experience when I was unable to address the Court pro se to change lawyers and was told I would be held in contempt of Court if I spoke without permission. Thank you, your Honor.

> THE COURT: Anything else?

> THE DEFENDANT: No, your Honor.

> THE COURT: Thank you. You may be seated."

The trial judge proceeded immediately into sentencing without even a hint of any response to defendant's grievances. While imposing sentence, the trial judge offered the following comment:

> "What I don't get and what I don't understand is how a person like [defendant] can just sit there and show no remorse at all. He's quick to jump on his lawyer *** like he jumped on *** his first lawyer, because he's not satisfied until he gets a lawyer in here that will walk him out that door. I'm not stupid, [defendant]. That's what's important to [defendant] is to get back on that street."

*People v. Krankel*, 102 Ill. 2d 181, 464 N.E.2d 1045 (1984), and its progeny guide our analysis of this final claim of error. The evolution of what has been denominated the "*Krankel* inquiry" has yielded a rule that counsel need not be appointed in every case where a defendant

17

presents a *pro se* claim of ineffectiveness. *People v. Moore*, 207 Ill. 2d 68, 77, 797 N.E.2d 631, 637 (2003). Instead, it is incumbent upon the trial court to examine the claim and its factual underpinnings. *Moore*, 207 Ill. 2d at 77-78, 797 N.E.2d at 637. Where a *pro se* claim is determined to be without merit or concerning a matter of trial strategy, there is no need to appoint counsel and denial of the motion is appropriate. *Moore*, 207 Ill. 2d at 78, 797 N.E.2d at 637. Alternately, if the allegations demonstrate the possibility of neglect, then counsel must be appointed. *People v. Chapman*, 194 Ill. 2d 186, 230, 743 N.E.2d 48, 74 (2000).

Our review of defendant's claim of error necessarily turns on the adequacy of the inquiry made by the trial court. *Moore*, 207 Ill. 2d at 78, 797 N.E.2d at 638; *People v. Bull*, 185 Ill. 2d 179, 210, 705 N.E.2d 824, 839 (1998). As the question of the adequacy of the inquiry is one of law, our review is *de novo*. *People v. Strickland*, 363 Ill. App. 3d 598, 606, 843 N.E.2d 897, 904 (2006).

Precedent dictates that a trial judge may not simply ignore a claim of ineffective assistance of counsel. See *People v. Sanchez*, 329 Ill. App. 3d 59, 66, 768 N.E.2d 99, 106 (2002) ("The trial court should afford a defendant the opportunity to specify and support his complaints and not 'precipitously and prematurely' deny the motion"), quoting *People v. Robinson*, 157 Ill. 2d 68, 86, 623 N.E.2d 352, 361 (1993). Our supreme court in *Moore* offered the following, which we perceive as a comprehensive statement of the basics of the inquiry:

> "During this evaluation, some interchange between the trial court and trial counsel
> regarding the facts and circumstances surrounding the allegedly ineffective
> representation is permissible and usually necessary in assessing what further action,

if any, is warranted on a defendant's claim. Trial counsel may simply answer questions and explain the facts and circumstances surrounding the defendant's allegations. [Citations.] A brief discussion between the trial court and the defendant may be sufficient. [Citations.] Also, the trial court can base its evaluation of the defendant's *pro se* allegations of ineffective assistance on its knowledge of defense counsel's performance at trial and the insufficiency of the defendant's allegations on their face. [Citations.]" *Moore*, 207 Ill. 2d at 78-79, 797 N.E.2d at 638.

In the case *sub judice* there was utterly no interchange. We note that defendant's posttrial complaint did not contain a great deal of detail. However, it clearly offered sufficient information upon which further questioning could have resolved any lingering doubt or established the necessity of further inquiry consistent with *Krankel*.

Here, as in *Moore*, given the absence of any inquiry at all we cannot conclude the trial judge was even familiar with the *Krankel* rule. See *Moore*, 207 Ill. 2d at 79, 797 N.E.2d at 638. The State argues, without citation, that "a trial court can forego inquiry when it is familiar with defense counsel's performance." This argument likewise suggests that the State is lacking a basic understanding of this rule. In *Moore*, the supreme court stated, "The law requires the trial court to conduct some type of inquiry into the underlying factual basis, if any, of a defendant's pro se posttrial claim of ineffective assistance of counsel." *Moore*, 207 Ill. 2d at 79, 797 N.E.2d at 638. This statement exists in stark contrast to the trial judge's conduct as well as the State's position on appeal. As additional support of its position, the State points to defendant's failure to assert a freestanding claim of ineffectiveness on appeal. While this may be a significant future

consideration, it is irrelevant to an assessment of the adequacy of the trial judge's response to defendant's motion.

Notably, although the trial judge did comment on defendant's *pro se* motion, the commentary was not at all consistent with *Krankel*'s teaching. Instead, the only discernible response was critical of defendant for asserting his misgivings. As noted, the judge commented upon defendant's apparent lack of remorse based upon his allegation of ineffectiveness. However, defendant's degree of remorse has minimal relevance to his assessment of his counsel's performance. Nevertheless, this comment was plainly inadequate and, essentially, dismissive of defendant's claim without any inquiry at all.

Importantly, *Moore* did permit a trial judge's decision on a *pro se* ineffectiveness motion to be based upon the judge's knowledge of counsel's performance and the merit of the claims on their face. *Moore*, 207 Ill. 2d at 79, 797 N.E.2d at 638. While the trial judge had the opportunity to observe counsel's performance, the claims asserted by defendant related to matters *de hors* the record and not readily ascertainable by a trial judge. Moreover, without further development, it was impossible to fully evaluate them. As noted, the claims asserted were somewhat vague. However, they clearly warranted further inquiry. No inquiry was made. As such, we must remand this cause for the limited purpose of conducting an inquiry into defendant's *pro se* claims of ineffectiveness and any further proceedings necessitated thereby. See *Moore*, 207 Ill. 2d at 79, 797 N.E.2d at 638.

As noted, defendant's remaining claims of error, (1) that his conviction and sentence for aggravated discharge of a firearm violates the one-act, one-crime rule; and (2) the $5 court

20

system fee, the $25 court supervision fee, the $10 mental health court assessment, the $5 youth diversion/peer court assessment, and the $5 drug court assessment should be vacated, are conceded by the State. Also as noted, we reject defendant's claims of error stemming from *voir dire* and the State's closing argument.

For the foregoing reasons, we remand the cause with directions to the trial court, for the limited purpose of conducting the preliminary *Krankel* inquiry. If the court finds counsel was ineffective, then defendant shall be entitled to a new trial on the merits. If, however, the court finds defendant's claim was spurious in that it does not establish a viable claim of ineffective assistance of counsel, then the judgment of conviction and sentence shall be affirmed as modified consistent with the State's concessions noted herein. See *Moore*, 207 Ill. 2d at 81-82, 797 N.E.2d at 639-40; *People v. Jocko*, 389 Ill. App. 3d 247, 268, 906 N.E.2d 38, 56 (2009); *People v. McCarter*, 385 Ill. App. 3d 919, 944, 897 N.E.2d 265, 287-88 (2008).

Remanded with directions.

TULLY and HOWSE, JJ., concur.

1-08-0383

Please use the following form

PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellee,

v.

DANIEL VARGAS,

Defendant-Appellant.

---

Docket No.

COURT
Opinion
Filed

No. __1-08-0383__

Appellate Court of Illinois
First District, __FIFTH__ Division

__November 20, 2009__
(Give month, day and year)

---

JUSTICE MICHAEL P. TOOMIN DELIVERED THE OPINION OF THE COURT:

JUSTICES _____        TULLY and HOWSE, JJ., concur.

---

APPEAL from the Circuit Court of Cook County, Chancery

Lower Court and Trial Judge(s) in form indicated in margin:

Appeal from the Circuit Court of Cook County.
The Hon. __Thomas P. Fecarotta, Jr.,__ Judge presiding.

---

FOR APPELLANTS

For APPELLEES, :

Indicate if attorney represents APPELLANTS or APPELLEES and include attorney's of counsel. Indicate the word NONE if not represented.

PLAINTIFF: STATE OF ILLINOIS- Anita Alvarez, State's Attorney, County of Cook, Room 309 - Richard J. Daley Center, Chicago, IL 60602. Of Counsel - James E. Fitzgerald, Mary P. Needham, Tasha-Marie Kelly, Shannan McFadden, Assitant State's Attorneys.

APPELLANT: DANIEL VARGAS - Michael J. Pelletier, State Appellate Defender, Patricia Unsinn, Deputy Defender, Elena B. Penick, Assistant Appellate Defender, Office of the State Appellate Defender, 204 North LaSalle Street - 24th Floor, Chicago, IL 60601.

22