2026 IL App (2d) 250248-U
No. 2-25-0248
Order filed June 17, 2026

**NOTICE:** This order was filed under Illinois Supreme Court Rule 23(b) and is not precedential except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee,

v.

KAMRON GARRAWAY, Defendant-Appellant.

Appeal from the Circuit Court of Kane County.
Honorable M. Lark Cowart, Judge, Presiding.
No. 23-CF-2802

PRESIDING JUSTICE KENNEDY delivered the judgment of the court.
Justices Jorgensen and Schostok concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Trial court conducted an adequate preliminary inquiry into defendant's *pro se* claim of ineffective assistance of counsel.

¶ 2   Following a jury trial in the circuit court of Kane County, defendant, Kamron Garraway, was found guilty of a single count of resisting or obstructing a peace officer (720 ILCS 5/31-1 (West 2022)) and was sentenced to a 24-month term of probation. Defendant argues on appeal that the trial court failed to conduct an adequate inquiry into his *pro se* allegations of ineffective assistance of counsel. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4     Defendant was indicted on two counts of resisting or obstructing a police officer. Each count pertained to one of two police officers—Timothy Young and Kurt Thomas— who arrested defendant in late December 2023. Both counts further alleged that "said resisting was the proximate cause of an injury" to the officer in question. Resisting or obstructing a peace officer is ordinarily a Class A misdemeanor. However, when, as here, it is charged that the violation was the proximate cause of an injury to a peace officer, the offense is a Class 4 felony. *Id.* § 31-1(a-7). Defendant was also charged with a single count of violating an order of protection (*Id.* §12-3.4 ) by having contact with a protected party, his ex-girlfriend S.B.

¶ 5     At trial, the State presented evidence that on December 15, 2023, defendant was served with an emergency order of protection requiring him to remain at least 1,000 feet away from S.B. Young, an Aurora police officer, testified that on December 27, 2023, he responded to a report of a violation of an order of protection. Young learned that defendant was the suspect, that S.B. had an active order of protection against him and that there was an outstanding warrant for defendant's arrest. When Young arrived at the location of the reported violation, Aurora police officer Kurt Thomas was already present. According to Young, he and Thomas located the "caller's vehicle" and observed a woman standing outside the vehicle's open driver-side door. Defendant was sitting inside the vehicle.

¶ 6     Young asked defendant several times to get out of the vehicle. Defendant ultimately complied, but became combative when Young told him there was a warrant for his arrest and that Young was going to place him in custody. Defendant refused to comply with Young's instruction that he place his hands behind his back. Young grabbed defendant's wrist, but defendant pulled away and lunged toward the woman standing near the car. At that point, Young decided to "take

[defendant] to the ground." In the ensuing struggle, defendant got on top of Young. Young maneuvered his way out from under defendant and punched defendant in the face several times. While defendant and Young were on the ground, other officers arrived. One of the officers used a Taser to subdue defendant, at which point defendant stopped struggling and was placed under arrest. Video of the incident, recorded by Young's body camera, was admitted into evidence and played for the jury.

¶ 7 Asked whether he had been injured, Young responded that he sustained "a fracture on [his] left shoulder and a torn labrum which required surgery." Defense counsel objected that the response "verg[ed] on expert testimony," but the trial court overruled the objection. Young then testified, "I had a nondisplaced fracture in my left shoulder. I tore my labrum and had some scrapes and cuts on my knuckles. My shoulder required surgery. I was off work for about a year for it." . He added that he continued to experience pain from the injury.

¶ 8 On cross-examination, defense counsel elicited further testimony that Young struck defendant repeatedly during the incident. Counsel also elicited testimony that, before the incident, Young was acquainted with neither defendant nor whomever had contacted the police. Counsel asked no questions about Young's injuries.

¶ 9 The State called Thomas to testify. Asked if he sustained any injuries during defendant's arrest, Thomas responded, "I had bone pain between my left pinky and left ring finger." He was not experiencing any pain at the time of trial.

¶ 10 After the State rested, defense moved for a directed verdict, arguing that the State failed to prove beyond a reasonable doubt that defendant violated the order of protection. Defense counsel contended that there was no evidence that the woman encountered in defendant's proximity was S.B. Counsel also contended that the State failed to prove beyond a reasonable doubt that defendant

resisted Young and Thomas. The trial court granted the motion in part, directing a verdict of not guilty on the charge of violating an order of protection.

¶ 11    Defendant did not present any evidence. During closing argument, defense counsel noted that Young testified that he "he eventually went to the hospital for a shoulder injury." Counsel added, however, that Young "did not testify that he went immediately, that he went right afterwards."

¶ 12    The jury found defendant guilty of the count of resisting a police officer pertaining to Young but not guilty of the count pertaining to Thomas. The trial court continued the matter for sentencing. In the intervening period, defendant filed a *pro se* motion pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984), claiming that he received ineffective assistance from defense counsel and seeking appointment of substitute counsel, and counsel filed a timely posttrial motion on defendant's behalf.

¶ 13    In his *pro se* motion, defendant alleged that counsel failed both to effectively cross-examine the State's witnesses and to "call on Doctors for expert testimony on Shoulder Injuries/torn Labrums." Defendant also contended that counsel didn't challenge the State's evidence or cross-examine Young about when he received treatment for his injury. Defendant asserted that counsel asked irrelevant questions during cross-examination instead of focusing on injuries. Defendant also contended that "[t]he jury wasnt [*sic*] informed threw [*sic*] opening statements, cross exam or closing that Officer Young was not treated for a *month* after [defendant's] arrest."

¶ 14    At the hearing on defendant's motion, when invited to address the court, defendant explained his understanding of the procedure for obtaining substitute counsel:

> "From my research, I understand that I must begin this process pro se either through a written Motion or letter to the Court or orally, I chose the latter. I learned once I state my

reasons for requesting this Hearing and Your Honor finds there's merit to my claim, Court may appoint new Counsel to represent me for a second Hearing. The purpose of the Preliminary Hearing, from my research, is to have an inquiry be made to determine whether new Counsel should be appointed to independently evaluate the Defendant's claim and avoid a conflict of interest trial Counsel would experience if Counsel would have to justify his or her actions contrary to the client's Petition, and I got that from People versus Chatman—uhm—the basis for my request is that I believe that trial Counsel was extremely ineffective and *** prejudiced my case at trial."

¶ 15    Defendant noted that Young's testimony was the only evidence that he sustained a torn labrum and that "there were no exhibits of x-rays, there were [*sic*] no *** expert testimony to substantiate those injuries."  Defendant argued:

"[Defense counsel] didn't question them [*sic*] on it at all[.] [H]e didn't call in experts to testify, any doctors, the specific doctor maybe or any doctor who can testify to *** how those injuries were—uhm—and instead, his questions on *** Cross were largely irrelevant, missing the opportunity to clarify to the Jury how such an injury can occur, when the alleged injury occurred, and what treatment was or was not received." .

¶ 16    Defendant further advised the court that the State had provided a "supplemental report" to him and counsel. The supplemental report indicated that Young "did not go to a hospital immediately after [defendant's] arrest and that "[Young's] first documented medical visit regarding the shoulder injury that he sustained from my arrest occurred nearly a month later."  Defendant explained the significance of the supplemental report as follows:

"This gap in time could reasonably raise doubts as to whether I was the proximate cause of that shoulder injury, and additionally, a torn labrum can occur from various causes

including from just repetitive motions, exercising, pre-existing conditions, or other injuries unrelated to this actual incident—uhm—that wasn't—when Officer Young testified on it, that is considered to be essentially evidence, and I just felt like that that evidence was not challenged and the Jury didn't get the *** didn't get the opportunity *** to be able to decide whether or not I caused an injury because if they had to just go on, you know their own interpretation of what would have happened, *** it would have seemed like he went and received care immediately after this[.]"

¶ 17    Defendant added that counsel informed him that "to be found guilty, [defendant] only needed to be the proximate cause of the injury." Defendant claimed that he had repeatedly asked counsel to "talk about" Young's "particular medical treatment," but counsel advised defendant that his trial strategy was to gain sympathy for defendant by focusing on the force used to subdue him.

¶ 18    After defendant initially addressed the court, the court stated:

"My understanding for the Motion that the main things that you wanted to raise were the lack of expert testimony about a torn labrum, the[,] *** in your opinion lack of Cross-examination related to that injury, and the timing of it *** and the trial strategy didn't include medical information, is that accurate for the main things that you are raising related to your Attorney?"

Defendant responded, "it wasn't so much of the strategy, it was more *** contesting the evidence."

¶ 19    At the point the following exchange occurred:

THE COURT: Yes, through the Cross-examination—

THE DEFENDANT: Yes, yes.

THE COURT: —and introduction of potentially expert testimony.

THE DEFENDANT: Yes, yes, ma'am.

THE COURT: Okay. All right. Mr. Roelfsema [defense counsel]?

ATTORNEY ROELFSEMA: Your Honor *** my Cross-examination and everything regarding the trial was *** a matter of trial strategy."

¶ 20    In denying defendant's motion, the trial court noted that it had reviewed its notes from the trial and had an independent recollection of the proceedings. The court observed that counsel's efforts resulted in acquittal on two of three charges against defendant and that it appeared to the court that counsel did "an excellent job on [defendant's] behalf." . The court noted that "what questions to ask on Cross-examination about an injury, those do fall within the purview of trial strategy that is set by the Attorney, and given the outcome of the case, it does seem that it was an effective trial strategy."

¶ 21    The trial court then heard and denied the posttrial motion filed by counsel, and sentenced defendant to a 24-month term of probation. Defendant filed a timely notice of appeal.

¶ 22                                    II. ANALYSIS

¶ 23    We begin by noting that claims of ineffective assistance of counsel are evaluated under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984), which requires a showing that counsel's performance "fell below an objective standard of reasonableness" and that the deficient performance was prejudicial in that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." To establish deficient performance, "a defendant must overcome a strong presumption that, under the circumstances, counsel's conduct might be considered sound trial strategy." *People v. Lagrone*, 2025 IL App (2d) 230543, ¶ 78. "Counsel's strategic choices that are made after investigation of the law and the facts are virtually unassailable." *People v. Ramsey*, 239 Ill. 2d 342, 433, 942 (2010)

¶ 24    In this case, we are not called upon to determine whether trial counsel's performance satisfied the *Strickland* standard. Rather, the question before us is whether the trial court properly handled defendant's *pro se* motion alleging that counsel's performance fell short. Under *People v. Krankel*, 102 Ill. 2d 181 (1984), when a criminal defendant raises a posttrial claim of ineffective assistance, the trial court must conduct a preliminary inquiry for the purpose of determining whether to appoint independent counsel to argue the claim on the defendant's behalf. *People v. Jackson*, 2020 IL 124112 ¶ 95. The trial court should appoint new counsel if, after the preliminary inquiry, the court determines that the defendant's allegations show "possible neglect of the case." *Id.* On the other hand, new counsel is unnecessary if the trial court concludes that the claim "lacks merit or pertains only to matters of trial strategy." *Id.*

¶ 25    During the preliminary inquiry, the trial court must examine the factual basis of the defendant's claim. *People v. Moore*, 207 Ill. 2d 68, 78 (2003). As our supreme court has explained:

> [S]ome interchange between the trial court and trial counsel regarding the facts and circumstances surrounding the allegedly ineffective representation is permissible and usually necessary in assessing what further action, if any, is warranted on a defendant's claim. Trial counsel may simply answer questions and explain the facts and circumstances surrounding the defendant's allegations. [Citations.] A brief discussion between the trial court and the defendant may be sufficient. [Citations.] Also, the trial court can base its evaluation of the defendant's *pro se* allegations of ineffective assistance on its knowledge of defense counsel's performance at trial and the insufficiency of the defendant's allegations on their face." *Id.* at 78-79

"The issue of whether the circuit court properly conducted a preliminary *Krankel* inquiry presents a legal question that we review *de novo*. *People v. Jolly*, 2014 IL 117142, ¶ 28.

¶ 26 When asked by the trial court to respond to defendant's complaints about his performance at trial, counsel responded that they pertained to matters of strategy. The thrust of defendant's challenge to the adequacy of the trial court's inquiry is that it did not garner enough information to determine whether defendant could potentially overcome the presumption that counsel's strategy was sound. Although strategic decisions are not given absolute deference in proceedings under *Krankel* (*People v. Maya*, 2019 IL App (3d) 180275, ¶¶ 24-30), a defendant who challenges counsel's strategic decisions has a high hurdle to clear. He or she must show that counsel's strategic decisions were "so irrational and unreasonable that no reasonably effective defense attorney, facing similar circumstances, would pursue such a strategy." (Internal quotation marks omitted.) *People v. Lewis*, 2015 IL App (1st) 122411, ¶ 85.

¶ 27 Defendant argues that the trial court could not determine whether counsel's strategy was sound without detailed knowledge of the contents of the supplemental report that defendant mentioned during the preliminary inquiry. According to defendant:

> "*Had* the report shown that Young was not treated for a month after the injury and/or that there was some other intervening cause, then the report *could* have been exculpatory or at least created doubt as to whether [defendant] caused Young's injury. *Had* the report raised further questions about Young's testimony or the State's version of events, the report *could* have been highly relevant in determining guilt." (Emphasis added.)

Citing *People v. Vargas*, 409 Ill. App. 3d 790 (2011), defendant argues that because his claim of ineffective assistance of counsel "rests at least partially on materials that were not on the record," the trial court "did not have sufficient knowledge to evaluate these claims based on its observations at trial."

¶ 28     Defendant's argument is unpersuasive. The purpose of the preliminary inquiry is to determine whether the *defendant's* allegations of ineffective assistance of counsel show possible neglect of the case, requiring appointment of new counsel. The trial court is not required to ferret out other possible grounds for appointing new counsel. *Vargas* does not hold otherwise. In that case, the trial court conducted no inquiry whatsoever into the defendant's claim, which were that his attorney failed to obtain records and review information that the defendant believed would assist the defense. *Id.* at 800. The defendant offered no description of the information and documents in question. The State argued that " 'a trial court can forego inquiry when it is familiar with defense counsel's performance.' " *Id.* at 802. The *Vargas* court observed that the State's argument suggested that the State lacked a "basic understanding" of the requirements of *Krankel* and its progeny. *Id.* The court added:

> "Importantly, [*People v.*] *Moore* did permit a trial judge's decision on a *pro se* ineffectiveness motion to be based upon the judge's knowledge of counsel's performance and the merit of the claims on their face. [Citation.] While the trial judge had the opportunity to observe counsel's performance, the claims asserted by defendant related to matters de hors the record and not readily ascertainable by a trial judge. Moreover, without further development, it was impossible to fully evaluate them. As noted, the claims asserted were somewhat vague. However, they clearly warranted further inquiry. No inquiry was made. As such, we must remand this cause for the limited purpose of conducting an inquiry into defendant's *pro se* claims of ineffectiveness and any further proceedings necessitated thereby." *Id.* at 803.

¶ 29     In contrast to *Vargas*, the case before us is not one where the trial court ignored the fundamental principles of *Krankel* and its progeny, disposing of the defendant's claim with no

meaningful inquiry and only the vaguest notion of the basis for the defendant's claims. Here, defendant explained precisely why the supplemental report was germane to his guilt or innocence: the report allegedly indicated that Young delayed treatment, which could call into question whether defendant caused his injury. Here, the trial court clearly had enough information about the supplemental report to ascertain how it related to defendant's claim.

¶ 30 Another case defendant relies on, *People v. Morgan*, 2017 IL App (2d) 150463, is similarly distinguishable. In *Morgan*, the defendant's complaints about counsel's performance came to light before trial, in a written fitness evaluation report. The report indicated that defendant had expressed his dissatisfaction with counsel's performance, whom the defendant perceived as lacking interest in the case. The report noted that the defendant complained that counsel had allowed a plea offer to lapse and that the defendant " 'pondered the prospects of being assigned an alternative attorney because of his belief that his current attorney has provided "ineffective counsel." ' " *Id.* ¶ 7. At the fitness hearing, the trial court engaged in the following exchange with the defendant:

" 'THE COURT: Okay. What's your motion, [defendant]?

THE DEFENDANT: Um, ineffective counsel.

THE COURT: Why?

THE DEFENDANT: I don't feel like [defense counsel] has my best interest.

THE COURT: You disagree with her?

THE DEFENDANT: Right.

THE COURT: Anything else? Anything specifically she didn't do for you?

THE DEFENDANT: Um, she dont—I don't feel that is really putting an effort, you know, reduce—I mean damage that's about to be done.

THE COURT: You mean get you a lower sentence?

THE DEFENDANT: Yes.

THE COURT: Listen, [defendant], I understand that sometimes relationships with attorneys can be strained especially when an attorney tries to be honest with you. I understand your [*sic*] in a position where it's your life and you feel like you want to have good news all the time, but I've got to tell you an attorney's job is not always to give you good news, it's also to give you bad news if it's there.

I observed [defense counsel] throughout these proceedings. I can find nothing to indicate in the record or in my observations of her conduct throughout these proceedings to even suggest that she has done anything other than represent you to the fullest of her abilities.

She happens, in my view, to be one of the best defense lawyers that works in this county that I have seen, [defendant]. You should [consider] yourself lucky to a [*sic*] good lawyer working for you. I know you don't always agree. Take me at my word. Your motion to discharge her for ineffective assistance is denied. What else do you have, [defendant]?

THE DEFENDANT: Nothing else.' " *Id.* ¶ 8.

¶ 31    In *Morgan*, we held, in essence, that the trial court should have probed the defendant's reasons for believing that counsel's failure to "get [the defendant] a lower sentence" established ineffective assistance. *Id.* ¶ 8. We explained:

"[W]hen the court questioned defendant, it did not ask defendant about his discussions with counsel or how counsel failed to obtain a lower sentence. Nor did it ask counsel any questions about defendant's claim. Instead, the court's evaluation of defendant's claim was based on its knowledge of counsel's performance. However, the court could not rely on its observations of counsel, because defendant's claim was not based on counsel's in-court

- 12 -

performance. [Citation.] Because the court failed to inquire into the specifics of defendant's claim, the court could not fully evaluate it. Thus, a remand is necessary for the limited purpose of conducting a proper inquiry under *Krankel*. [Citation.]" *Id.* ¶ 18.

Here, in contrast, defendant did not simply offer a vague claim of neglect. Rather, in his written motion and during the preliminary inquiry, defendant conveyed specific grievances about counsel's decisions as to what evidence to present. Moreover, the trial court's observation of counsel's performance was pertinent because, unlike in *Morgan*, counsel's performance *at trial* was at issue.

¶ 32 Defendant also faults the trial court failing to question trial counsel in more depth about defendant's allegations. Counsel's only contribution to the inquiry was his assertion that "[c]ross-examination and everything regarding the trial *** was a matter of trial strategy." While further elaboration might have been helpful, it was not essential for an adequate preliminary inquiry. Defense counsel need not explain his or her reasons for pursuing a particular strategy when the reasons for doing so are readily apparent. To illustrate, in *People v. Lewis*, 2015 IL App (1st) 122411, ¶ 85, the court rejected the argument that "the trial court's acceptance of counsels' assertions of trial strategy, without further questioning by the trial court or further explanation by defense counsel, did not constitute an adequate *Krankel* inquiry." The *Lewis* court held that the trial court did not require a detailed explanation of various strategic decisions (*id.* ¶¶ 86-91), including the decision not to call the defendant's wife as a witness (*id.* ¶ 86). As to that decision, the court noted the limited benefit of calling a witness who could have been attacked for bias, and whose cross-examination testimony might have been detrimental to the defense. *Id.*

¶ 33 As in *Lewis*, the trial court in this case did not need a detailed explanation of counsel's reasons for not attacking Young's testimony regarding his injury. "Decisions regarding which

evidence to present and which witnesses to call are matters of trial strategy [citation], and counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary [citation.]" *People v. Williams*, 2017 IL App (1st) 152021, ¶ 38. Here, it is obvious why, as a matter of strategy, counsel would choose not to focus on the issue of whether Young sought immediate treatment after his altercation. Although the jury might view the delay as reason to question the connection between the altercation and Young's injury, aggressive questioning along those lines could have antagonized the jury. Moreover, such an approach might well have led Young to expound on his shoulder pain and any other symptoms he experienced after the altercation.

¶ 34    We note that, in his opening brief, defendant only briefly mentions the allegations in his motion that counsel provided ineffective assistance by failing to call any expert witnesses or introduce medical evidence such as x-rays. However, the State's brief addresses the lack of expert testimony, arguing that calling an expert could have drawn undue attention to Young's injury, thereby evoking the jury's sympathy. Thus, according to the State, counsel's decision not to present expert testimony was strategically sound. We agree for essentially the same reasons explained in our discussion of the information in the supplemental report. Placing heavy emphasis on Young's injury was a strategic option that could very well have backfired. Counsel's decision not to do so was not "so irrational and unreasonable that no reasonably effective defense attorney, facing similar circumstances, would pursue such a strategy." (Internal quotation marks omitted.). *Lewis*, 2015 IL App (1st) 122411, ¶ 85.

¶ 35    In his reply brief, defendant argues that because the record does not reveal what testimony an expert might have given, the trial court could not determine whether not presenting expert testimony was a sound strategy. The argument is unpersuasive. Perhaps to his disadvantage in this

appeal, during the preliminary inquiry defendant showed a sophisticated understanding of the *Krankel* proceedings and his lengthy explanation why he thought counsel's performance was lacking strikes us as uncommonly clear and articulate for a layperson. Defendant understood that the State was required to prove that he proximately caused Young's injury. He noted that "a torn labrum can occur from various causes including from just repetitive motions, exercising, pre-existing conditions, or other injuries unrelated to this actual incident." With respect to expert testimony, however, he merely noted that counsel "didn't call in experts to testify, any doctors, the specific doctor maybe or any doctor who can testify *** how those injuries were ***." Defendant didn't finish the thought, but it is clear that he was commenting on causation. It is safe to assume that if defendant had a more specific knowledge of what testimony an expert would have offered, he would have said so. We therefore fail to see what purpose further inquiry would serve.

¶ 36     We thus conclude that the preliminary *Krankel* inquiry established the basis for defendant's claim of ineffective assistance of counsel and enabled the court to determine whether defendant was entitled to have independent counsel appointed.

¶ 37                                III. CONCLUSION

¶ 38     For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 39     Affirmed.