THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DAVE V. BROOKS *et al.*, Defendants-Appellants.

First District (3rd Division)   Nos. 84—2358, 84—2359 cons.

Opinion filed July 13, 1988.

Randolph N. Stone, Public Defender, of Chicago (Alison Edwards, Assistant Public Defender, of counsel), for appellants.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry and Paula M. Carstensen, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RIZZI delivered the opinion of the court:

Following a jury trial, defendants, Dave Brooks and Harlan Hayes, were convicted of armed robbery on a theory of accountability. Defendant Hayes was sentenced to a term of six years' imprisonment in the Illinois Department of Corrections. Defendant Brooks, a juvenile, was assigned to the Illinois Juvenile Detention Center for a period of six years. This appeal followed.

On appeal, both defendants essentially argue that (1) the trial court committed reversible error in refusing to question on *voir dire* the jurors' attitudes regarding defendants' burdens of proof and the fact that defendants' failure to testify cannot be held against them; (2) the trial court erred in denying defendants' motion for a mistrial; (3) defendants were denied a fair trial on the basis of references to the investigation of the armed robbery being conducted by the gang crimes unit of the Chicago police department; and (4) defendants were denied a fair trial as a result of the trial court's improper re-

sponse to a question posed by the jury while impaneled. Defendant Brooks individually argues that (1) he was improperly tried as an adult pursuant to the automatic juvenile transfer statute (Ill. Rev. Stat. 1985, ch. 37, par. 702–7(6)), and (2) the automatic juvenile transfer statute violates equal protection and substantive and procedural due process. We reverse and remand.

On August 28, 1983, the victim, John Guilfoyle, was robbed after driving a woman known as Ms. Thomas to her home at 6729 South Ada Street. According to Thomas, a prostitute, she knew the victim from previous encounters. Based on information supplied to the Chicago police, defendants were subsequently arrested on September 8, 1983. Mac, who was identified as a suspect, was never located. Thereafter, both defendants gave substantially the same statements confirming their presence and participation in the robbery of the victim.

Initially, our review of the record indicates that on the night in question, the victim picked up Thomas and arranged to have sexual intercourse with her. The victim then drove Thomas to her home so that she could change her clothes. The victim waited in his car while Thomas changed.

According to defendant Brooks' statement, on the evening in question, he was sitting on Richard Sims' porch with Sims and defendant Hayes when a car driven by a white male parked across the street. Thereafter, Thomas got out of the car and walked into her house. Then a "guy named Mac" approached defendants and asked them what the victim was doing in their "hood." Mac then indicated that he was going to get a gun so that he and defendants could rob the victim. A few minutes later, Mac returned to the porch with a gun. Defendant Brooks then walked to the rear of Thomas' house. As Thomas was exiting the house, defendant Brooks told Thomas that he, Mac and defendant Hayes were going to rob the victim. Defendant Brooks then informed Thomas that he would take her out of the area so that it would not appear Thomas had arranged the robbery.

Shortly thereafter, Mac pulled the victim from his car, pointed the gun in the victim's face, and began yelling at him. Defendant Hayes then entered the victim's car and drove it around the corner into an alley while Mac took the victim to a vacant lot. Once in the vacant lot, Mac called defendant Brooks to come and pat down the victim for weapons. Brooks patted down the victim but did not find any weapons. Upon hearing sirens, Brooks ran away. Brooks further indicated that the gun Mac was carrying looked like a .45 caliber

handgun but that it was not. Following defendant Brooks' confession, his statement was reduced to writing by an assistant State's Attorney.

Defendant Hayes' confession is substantially the same as the statement given by defendant Brooks. However, defendant Hayes' statement additionally indicated that (1) the gun in question was black, (2) when he drove the victim's car into the alley, Sims ran up, got in the car, and (3) Hayes then drove the car down the street a block or two and parked in an alley. Defendant Hayes also heard sirens, at which point he jumped from the car and ran. Following his confession, defendant Hayes' statement was also reduced to writing by an assistant State's Attorney.

At trial, Thomas testified for the State as an eyewitness to the robbery. Thomas stated that she was a prostitute and had a drug problem. Thomas' testimony was nearly identical to the facts set forth in defendants' confessions. Thomas further testified that she saw only half of the gun that Mac was holding.

The victim did not testify at trial. He died of unrelated causes prior to the commencement of trial.

■ We initially address defendants' argument that the trial court erred in failing to question prospective jurors in accordance with our supreme court's holding in *People v. Zehr* (1984), 103 Ill. 2d 472, 469 N.E.2d 1062. In *Zehr*, the court determined that essential to the qualification of jurors in a criminal case is the jurors' awareness that (1) a defendant is presumed innocent; (2) a defendant is not required to offer any evidence in his own behalf; (3) a defendant must be proven guilty beyond a reasonable doubt; and (4) a defendant's failure to testify in his own behalf cannot be held against him. The court therefore concluded that a defendant has a right to question members of the venire to establish their attitudes concerning these factors. *Zehr*, 103 Ill. 2d at 477, 469 N.E.2d at 1064.

The State, however, contends that *Zehr* is inapplicable here because while the *voir dire* examination in this case was conducted on July 31, 1984, the decision in *Zehr* did not become effective until September 28, 1984, upon modification on a denial of a petition for rehearing. The State essentially argues that the trial court was not required to apply the law as set forth in *Zehr* at the time of defendants' trial because a petition for rehearing had been filed, and the opinion was subsequently modified on September 28, 1984. As a result, the modified opinion of the court as set forth in *Zehr* superseded and vacated the rule of law concerning *voir dire* set forth in the opinion issued by the court on July 31, 1984. We find no merit in

the State's argument.

■ A judgment of a court of review is entered when the opinion is filed. (*Long v. City of New Boston* (1982), 91 Ill. 2d 456, 462, 440 N.E.2d 625, 627.) Moreover, contrary to the State's position, the filing of a petition for rehearing does not alter the effective date of the judgment of a reviewing court unless the petition for rehearing is granted. (*PSL Realty Co. v. Granite Investment Co.* (1981), 86 Ill. 2d 291, 305, 427 N.E.2d 563, 570.) In the event that a petition for rehearing is allowed, the effective date of the judgment is the date that the judgment is entered on rehearing (*PSL Realty Co.*, 86 Ill. 2d at 305, 427 N.E.2d at 570), and only then does the later modification of the filed opinion supersede and vacate the effect of the earlier opinion. *Long*, 91 Ill. 2d at 462, 440 N.E.2d at 627.

■ In the present case, the opinion in *Zehr* was filed on March 23, 1984. The opinion was later modified upon the denial of a petition for rehearing and refiled on September 28, 1984. While a modification to an opinion following a rehearing does supersede and vacate the earlier opinion (*Long*, 91 Ill. 2d at 462, 440 N.E.2d at 627), this did not occur here. Rather, the petition for rehearing was denied, and the modification concerned a matter completely unrelated to the *voir dire* issue originally addressed by the supreme court in the July 31, 1984, *Zehr* opinion. Therefore, the modification of the unrelated issue did not supersede and vacate that portion of *Zehr* dealing with *voir dire*. As a result, the law as set forth in *Zehr* on July 31 was clearly applicable to the *voir dire* proceeding in defendants' case. Moreover, based on the record here, we find no merit in the State's contention that defendants waived this issue for purposes of appeal.

Having determined that the disposition of this case is governed by the holding of the supreme court as set forth in *Zehr*, we next address the issue of whether the *voir dire* examination in defendants' case was conducted in accordance with the requirements of *Zehr*. Prior to trial, defendant submitted eight questions to be asked of "each juror individually" during the *voir dire* examination. Among these eight questions, two are at issue here. These two questions stated:

> "3. Do you expect defendants to take the stand and testify on their own behalf and tell you their side of the story?
>
> 4. Would you take defendants' failure to testify at trial into consideration in arriving at your verdict?"

During discussion of these *voir dire* questions, the trial court stated:

> "I want to make it perfectly clear that I would not discuss, in any way with the jurors, the defendant testifying, or failure to

testify. But if you want me to ask a question similar to what you've put down, Question No. 4, I will be happy to do that."

However, neither the trial court's opening remarks to the venire, nor his specific questions to the individual members of the venire, probed their feelings regarding the subject matter of questions three and four. Yet, the State argues that the trial court's comments to the entire venire, prior to the commencement of individual questioning, adequately probed the individual members of the *voir dire* for any possible bias or prejudice in compliance with the requirements of *Zehr*. We disagree.

■ In *Zehr*, the supreme court determined that the trial court committed reversible error in refusing to probe on *voir dire* members of the venire's attitudes concerning (1) returning a guilty verdict if the State did not sustain its burden of proof; (2) the presumption of innocence; (3) the fact that a defendant need not present any evidence; and (4) the fact that a defendant's failure to testify cannot be held against him in arriving at a verdict. (*Zehr*, 103 Ill. 2d at 477, 469 N.E.2d at 1064.) The *Zehr* court held that " '[e]ach of these questions goes to the heart of a particular bias or prejudice which would deprive defendant of his right to a fair and impartial jury.' " (103 Ill. 2d at 477.) While proposed *voir dire* questions dealing with these issues need not be asked in the exact form submitted by a defendant, the *subject matter* of the questions must be covered in the course of interrogation on *voir dire*. 103 Ill. 2d at 477, 469 N.E.2d at 1064.

■ In the present case, the subject matter of the questions at issue was neither covered in the course of *voir dire* interrogation, nor even set forth in the trial court's general comments to the venire. This court has specifically determined that "[t]he principle that a defendant's failure to testify in his own behalf cannot be held against him is perhaps the most critical guarantee under our criminal process and is vital to the selection of a fair and impartial jury that a juror understand this concept." (*People v. Boswell* (1985), 132 Ill. App. 3d 52, 56, 476 N.E.2d 1154, 1157.) Therefore, in accordance with the supreme court's holding in *Zehr* that each of these questions is required to be covered in *voir dire*, we reverse defendants' convictions and remand this cause for a new trial.

As we have reversed defendants' convictions and remanded this cause for a new trial, we shall address those additional issues which are likely to arise again in a new proceeding.

■ Defendant Brooks argues that he was tried and convicted in violation of the Juvenile Court Act (Act) (Ill. Rev. Stat. 1983, ch. 37,

par. 701—1 *et seq.*) because the indictment against him failed to specify that the crime of armed robbery had been committed with a firearm. At the time of defendant's indictment, section 2—7(6) provided in relevant part:

"(a) The definition of a delinquent minor under Section 2—2 of this Act shall not apply to any minor who at the time of an offense was at least 15 years of age and who is charged with murder, rape, deviate sexual assault or armed robbery when the armed robbery was committed with a firearm. These charges and all other charges arising out of the same incident shall be prosecuted pursuant to the Criminal Code of 1961, as amended.

(b) If before trial or plea an information or indictment is filed which does not charge an offense specified in paragraph (a) of subsection (6) of this Section, the State's Attorney may proceed on the lesser charge or charges but only in Juvenile Court pursuant to the other provisions of the Juvenile Court Act, unless prior to trial the minor defendant knowingly and with advice of counsel waives, in writing, his right to have the matter proceed in Juvenile Court." (Ill. Rev. Stat. 1983, ch. 37, pars. 702—7(6)(a), (6)(b).)

Section 2—2 of the Act defined a delinquent minor as "any minor who prior to his 17th birthday has violated or attempted to violate, regardless of where the act occurred, any federal or state law or municipal ordinance." (Ill. Rev. Stat. 1983, ch. 37, par. 702—2.) At the time of defendant Brooks' arrest, he was 15 years old.

In the present case, the complaint for preliminary examination charged defendant Brooks with committing armed robbery "while armed with a dangerous weapon, an unknown caliber handgun." The indictment charged defendant Brooks with armed robbery on a theory of accountability because he:

"Committed the offense of armed robbery in that *** [he] by the use of force and by threatening the imminent use of force while armed with a dangerous weapon, took an automobile from the person and presence of *** [the victim], in violation of Chapter 38, Section 18—2—A of the Illinois Revised Statutes 1981 as amended."

It is defendant Brooks' contention that since the count against him for armed robbery did not specifically allege that the robbery was committed "with a firearm," but instead stated that the armed robbery occurred while defendant was armed with a "dangerous weapon," it was error to subject Brooks to automatic transfer under

the Act. Brooks therefore argues that the indictment against him should be dismissed, his conviction vacated and his cause remanded for disposition under the Act. We disagree.

In *People v. J.S.* (1984), 103 Ill. 2d 395, 469 N.E.2d 1090, our supreme court addressed the issue raised by defendant Brooks. In *J.S.*, a consolidated appeal, each defendant was charged with committing an armed robbery while armed with a dangerous weapon. The indictment against the defendants did not specify that the robberies were committed with a firearm. On appeal, the defendants contended that they were not subject to automatic transfer under the Act because the indictments were fatally flawed due to the failure to charge the defendants with armed robbery by the use of a firearm.

The *J.S.* court rejected the defendants' contention and stated:

"[W]e believe that the offenses charged here sufficiently set forth so as to enable the defendants to be apprised of the charges against them, to properly prepare their defenses, and to use any judgments entered against them as a bar to future prosecution for the same offense.

We agree with the State that the charges read as a whole clearly specify that the defendants were charged with armed robbery with a firearm ***." (103 Ill. 2d at 409, 469 N.E.2d at 1097.)

We believe that the court's analysis and conclusion in *J.S.* is dispositive of the issue raised by defendant Brooks.

Here, Brooks was indicted for committing an armed robbery while armed with a dangerous weapon. Defendant Brooks was also indicted for armed violence. That indictment stated:

"While armed with a dangerous weapon, to wit: a gun by use of force and by threatening the imminent use of force, took the wallet, miscellaneous identification and an automobile from the person and presence of *** [the victim] in violation of Chapter 38, section 33A—2/I/18—2—A of the Illinois Revised Statutes 1981 as amended."

Moreover, defendant Brooks gave a statement implicating himself in the armed robbery of the victim. Brooks' statement indicates that Mac was carrying what looked like a .45 caliber handgun but was not. We believe that in light of the facts present in this case, specifically the preliminary examination, the indictments against Brooks, his statement to the police and the posture of the charges against him, that the charges read as a whole clearly apprised defendant Brooks that he was going to be tried for armed robbery with a firearm. However, because we have remanded this cause of action for a

new trial as a result of the trial court's failure to comply with the requirements of *Zehr*, we make no finding concerning whether or not the instrument used in the robbery of the victim was actually a firearm. This is a question of fact to be addressed by the trier of fact. *People v. J.S.* (1984), 103 Ill. 2d 395, 409, 469 N.E.2d 1090, 1097.

■ We lastly address defendant Brooks' contention that section 2—7(6)(a) of the Act unconstitutionally deprived him of substantive and procedural due process of law and equal protection.

The Illinois Supreme Court holding in *J.S.* (103 Ill. 2d 395, 469 N.E.2d 1090) is likewise dispositive of this issue. In *J.S.*, the defendants argued that the distinction which is drawn in section 2—7(6) concerning certain crimes is arbitrary and discriminatory and that it deprives defendants of procedural and substantive due process and equal protection of the laws. The *J.S.* court rejected the defendants' contentions and determined that section 2—7(6) of the Act is constitutional. (103 Ill. 2d 395, 469 N.E.2d 1090.) We are bound to follow our supreme court's ruling in *J.S.*[1] Therefore, since defendant Brooks' contentions concerning this issue are the same as the arguments raised by the defendants in *J.S.*, we find no merit in Brooks' arguments.

Accordingly, for the reasons stated, the judgment of the trial court is reversed and the cause is remanded.

Reversed and remanded.

WHITE, P.J., and McNAMARA, J., concur.

---

[1] In the case of *In re D.T.* (1986), 141 Ill. App. 3d 1036, 1045, 490 N.E.2d 1361, 1367, this court determined that although the *J.S.* court's analysis of the constitutionality of section 2—7(6) addressed alleged violations of the Federal Constitution, this analysis was equally applicable to *D.T.*'s arguments concerning section 2—7(6) and its alleged violations of our State's constitution. We then found the constitutional arguments raised by *D.T.* to be without merit.