Nos. 2--08--0218 & 2--08--0219 cons.     Filed: 2-23-10

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Nos.  05--CM--4893 |
| JOHN R. SCHAEFER, | ) ) ) | Honorable William H. Weir, |
| Defendant-Appellant. | ) | Judge, Presiding. |

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Nos.  06--CF--318 |
| JOHN R. SCHAEFER, | ) ) ) | Honorable William H. Weir, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the opinion of the court:

After a joint trial on misdemeanor and felony charges, a jury convicted defendant, John R. Schaefer, of aggravated driving under the influence of alcohol (DUI) (625 ILCS 5/11--501(a)(2) (West 2004)), transportation of open alcohol (625 ILCS 5/11--502(a) (West 2004)), improper lane usage (625 ILCS 5/11--709(a) (West 2004)), and resisting or obstructing a police officer (720 ILCS

5/31 (West 2004)). On February 21, 2008, the trial court sentenced defendant to 36 months' probation, and on March 12, 2008, defendant filed his notices of appeal.

Defendant argues on appeal that: (1) a new trial is warranted because the trial court failed to question the jury venire in accordance with Supreme Court Rule 431(b) (Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007); (2) the case must be remanded for a hearing as to his fitness at the time of trial; (3) the case must be remanded for a hearing on his pro se motion alleging ineffective assistance of counsel; and (4) his conviction of improper lane usage must be reversed because the State failed to prove his guilt beyond a reasonable doubt. We agree with defendant on the first and fourth issues. Therefore, we need not reach the second and third issues. We reverse and remand for a new trial on the DUI, transportation of open alcohol, and obstruction charges.

I. BACKGROUND

A. Jury Selection

The facts are undisputed. On January 14, 2008, the trial court addressed all prospective jurors and informed them that, in criminal cases, the State bears the burden to prove a defendant's guilt beyond a reasonable doubt. The court asked all prospective jurors whether anyone had "any problem" with the concepts that defendant was presumed innocent and that they could find him guilty only if, after hearing all of the evidence and instructions of law at the end of trial, they determined that he was guilty beyond a reasonable doubt.

The jury was selected in a series of three panels; four jurors were selected from each panel. The trial court asked no questions of any prospective jurors in those panels. The assistant State's Attorney asked all prospective jurors whether they: (1) understood that the State bore the burden to

prove its case beyond a reasonable doubt; (2) believed that the State could meet its burden even if it presented only one or two witnesses; and (3) had any moral, philosophical, or religious objections to standing in judgment of another person. In addition, the assistant State's Attorney asked some prospective jurors in the second and third panels whether they would agree to follow the law as instructed by the trial court at the end of the case, even if they disagreed with it. The jury was sworn in and recessed for lunch.

Upon its return, the trial court informed the jury:

"As I have previously instructed you, the defendant in this or any criminal case is presumed innocent of the charges against him. Before a defendant in this case or in any American case can be convicted the State must prove beyond a reasonable doubt that he is guilty of the crime or crimes that he is charged with. The defendant is not required to offer any evidence at all on his own behalf. You may not infer anything negative or hold it against him if the defendant elects not to testify. He has a right to testify on his own behalf. He also has a right to not testify on his own behalf."

The court explained the trial process to the jury and noted that the defense could present evidence if it wished, but was under no obligation to do so.

### B. Trial

Thereafter, the trial commenced. The evidence relevant to the issues on appeal established that, on July 31, 2005, Kane County emergency volunteer Charles Nadr was blocking off roads in Sugar Grove, due to a chemical spill on Route 47. Police cars, ambulances, emergency management vehicles, and fire trucks, all with flashing lights, were present. Nadr was blocking off the eastbound ramp on Route 30 heading onto Route 47. Route 30 passes over Route 47; Route 30 is a four-lane

highway (two in each direction) divided by a 10-foot grassy median. At around 6:30 p.m., Nadr saw a car traveling west on Route 30 in an eastbound lane. Approximately one-quarter of a mile away, a semi-truck and several cars were approaching in the eastbound lanes. Nadr ran onto Route 30 and flagged down the car that was traveling in the wrong direction and tried to get the car "down the ramp to get him off the highway." The car slowed down and pulled in front of the guard rail along the exit ramp, lightly tapping the guard rail with its front bumper as it stopped. The car's driver put the car in reverse and started backing up; Nadr hit the hood of the car and told the driver to stop and put the car in park. Police officers arrived shortly thereafter. Nadr observed a brief struggle between the officers and the car's driver, defendant.

One of the officers, Kevin Smith, testified that he observed defendant's car parked across the entrance to the ramp. He observed Sergeant John Gennaro speak with defendant through the driver's door, and, although he could not hear defendant's replies, it appeared from Gennaro's reactions that defendant was being uncooperative. Smith and Gennaro pulled defendant from the car and took him to the ground. Smith was partially on top of defendant. Smith detected a strong odor of alcohol coming from defendant. After being cuffed, defendant was walked to the squad car. Defendant was swaying, stumbling, and having a hard time maintaining balance while the officers walked him to the car. Defendant and Gennaro suffered some abrasions to their knees.

According to Smith, after defendant was placed inside the squad car, Gennaro discovered one open and three unopened beer cans in defendant's vehicle. The open beer can had some beer left in it. At the police station, defendant refused a breath test. Smith testified that, based upon his experience as an officer trained in DUI detection and based upon his interactions with defendant, he believed that defendant was under the influence of alcohol and unfit to operate a vehicle.

Defendant did not testify or present any other evidence on his behalf. In closing, his counsel suggested that the chemical spill and resulting emergency vehicles, lights, and traffic confused defendant into making a wrong turn such that he wound up driving the wrong direction on the road.

The jury found defendant guilty of all four charges. Defendant appeals.

## II. ANALYSIS

### A. Jury Selection

Defendant argues first that he was denied a fair and impartial jury because the trial court failed to properly question the jury venire in accordance with Supreme Court Rule 431(b). Specifically, defendant argues that the court erred when it failed to ask the prospective jurors whether they understood and accepted that: (1) defendant was not required to present any evidence; and (2) defendant's failure to testify could not be held against him. Defendant concedes that he did not object below to the court's alleged error which, ordinarily, results in forfeiture of the issue. See People v. Barrow, 133 Ill. 2d 226, 260 (1989). However, he argues that reversal is appropriate under both prongs of the plain-error analysis. See 134 Ill. 2d R. 615(a); People v. Herron, 215 Ill. 2d 167, 178-79 (2005).

We may consider a forfeited error under the plain-error rule when "the evidence in a case is so closely balanced that the jury's guilty verdict may have resulted from the error and not the evidence" or when "the error is so serious that the defendant was denied a substantial right, and thus a fair trial." Herron, 215 Ill. 2d at 178-79. First, we must determine whether there was error.

Rule 431(b) provides:

"The court shall ask each potential juror, individually or in a group, whether that juror understands and accepts the following principles: (1) that the defendant is presumed innocent

of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that the defendant's failure to testify cannot be held against him or her; however, no inquiry of a prospective juror shall be made into the defendant's failure to testify when the defendant objects.

The court's method of inquiry <u>shall</u> provide each juror an opportunity to respond to specific questions concerning the principles set out in this section."  (Emphases added.) Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007.

Supreme court rules are not aspirational or mere suggestions but, rather, they have the force of law and it is presumed that they will be obeyed and enforced as written. <u>People v. Glasper</u>, 234 Ill. 2d 173, 189 (2009).  The word "shall" in a statute or rule generally reflects a " 'clear expression of legislative intent to impose a mandatory obligation.' "  <u>People v. Blair</u>, 395 Ill. App. 3d 465, 470 (2009), quoting <u>People v. O'Brien</u>, 197 Ill. 2d 88, 93 (2001).  Accordingly, the plain language of Rule 431(b) imposes upon the trial court an affirmative obligation to ask prospective jurors whether they understand and accept the four principles therein and, in making those inquiries, the court must provide the prospective jurors an "opportunity to respond." <u>Blair</u>, 395 Ill. App. 3d at 471.

Here, the State concedes that the trial court erred when it did not technically comply with Rule 431(b).  Indeed, the trial court asked prospective jurors only whether they: (1) "had any problem" with (2) the first and second principles.  During <u>voir</u> <u>dire</u>, the assistant State's Attorney asked the prospective jurors whether they understood that the State bore the burden to prove its case beyond a reasonable doubt.  Neither the court nor counsel asked any prospective juror whether he or she understood and accepted the third and fourth principles.  The court's general pronouncement

of the law, including the third and fourth principles, <u>after</u> the jury was sworn and immediately preceding the trial's commencement, did not cure the error. That pronouncement did not ask the jurors whether they understood and accepted the principles, nor did it provide them any opportunity to respond. Rule 431(b) was promulgated specifically out of concern that broad pronouncements of the law were insufficient protections to demonstrate each juror's understanding and acceptance of the four principles. See <u>Blair</u>, 395 Ill. App. 3d at 476. Moreover, the ability to question jurors <u>before</u> they are impaneled "allows the court and parties to ascertain whether any of the prospective jurors harbors a particular bias or prejudice." <u>Blair</u>, 395 Ill. App. 3d at 479. Thus, we conclude that the court committed error. We now consider whether the error is reversible under the plain-error rule.

We disagree with defendant that reversal under the first prong of the plain-error analysis is appropriate because the evidence was close such that the error, not the evidence, might have been the basis for the jury's verdict. <u>Herron</u>, 215 Ill. 2d at 178-79. Defendant notes that Gennaro did not testify, there were no breath test results to consider, and Smith did not testify to any slurred speech, bloodshot eyes, or other indicia of defendant's alleged intoxication. However, the evidence reflected that defendant drove the wrong direction on a highway; bumped a guardrail when stopping; possessed open alcohol in his vehicle; smelled of alcohol; struggled to maintain his balance when escorted to the squad car; and was uncooperative with the arresting officer. Moreover, although defendant asserts that the jury's questions reflected concerns about the quality of the State's evidence,[1] the fact that the

---

[1]During its deliberations, the jury asked the court: "(1) can we get a copy of the police report; (2) why was the arresting officer [Gennaro] not present at the trial; and (3) can we get a map of the intersection and location of the east and westbound exits and entrances?" The jury was instructed that it was not permitted under Illinois law to receive the police reports and that it could consider only

jury might have wondered about the absence of certain evidence from the State's case does not reflect that the evidence was closely balanced. Thus, the first prong of the plain-error analysis is not implicated.

Next, we consider under the second prong of the plain-error analysis whether the error was so serious that defendant was denied a substantial right and, thus, a fair trial. Herron, 215 Ill. 2d at 178-79. For the following reasons, we conclude that it was and that the cause must be remanded for a new trial.

Prior to May 1, 2007, Rule 431(b), required a trial court to ask prospective jurors about the four principles only upon a defendant's request. See Blair, 395 Ill. App. 3d at 471. In 2007, the supreme court amended the rule such that the trial court is now required to ask prospective jurors about the four principles even absent a request by the defendant. Blair, 395 Ill. App. 3d at 471. Here, because defendant's trial commenced in January 2008, the 2007 version of Rule 431(b) applies. See Blair, 395 Ill. App. 3d at 469.

In Glasper, our supreme court applied a harmless-error analysis to a court's Rule 431(b) error and concluded that reversal for a new trial was unwarranted because there was no "structural error." Glasper, 234 Ill. 2d at 199-200. The court expressly limited its holding to the pre-2007 version of Rule 431(b), which was the version applicable to the case. "We emphasize that this holding is limited to the version of Rule 431(b)(4) that was in effect at the time of the instant trial, and would not necessarily apply to subsequent versions of the rule." Glasper, 234 Ill. 2d at 200. Accordingly, courts have subsequently considered whether, under a plain-error analysis, a Rule 431(b) violation

the evidence admitted at trial.

involving the 2007 version of the rule might deny a defendant a substantial right and warrant reversal for a new trial.

Notably, in Blair, a panel of this court recently considered the issue. In that case, the trial court failed to properly question the jury in accordance with Rule 431(b). This court, applying a plain-error analysis, reversed and remanded for a new trial. Blair, 395 Ill. App. 3d at 477-78. We applied the second prong of the plain-error test and concluded that, where the trial court did not ask any prospective juror about his or her understanding and acceptance of all four principles, it failed to fully comply with Rule 431(b). Blair, 395 Ill. App. 3d at 477.

In considering whether the error was so serious as to deny the defendant a substantial right and a fair trial, we recognized that our supreme court has stated that not every violation of its rules mandates reversal (Glasper, 234 Ill. 2d at 193, 197). Blair, 395 Ill. App. 3d at 477. Nevertheless, we noted that voir dire promotes the right to an impartial jury by allowing the court and the parties to assess information about prospective jurors' beliefs and opinions so that any with minds closed by bias and prejudice may be removed. Blair, 395 Ill. App. 3d at 477-78. We further noted that Rule 431(b) requires the trial court to ask each prospective juror "whether he or she understands and accepts the bedrock principles of our criminal justice system" and that Rule 431(b) was promulgated to give effect to our supreme court's decision in People v. Zehr, 103 Ill. 2d 472 (1984). Blair, 395 Ill. App. 3d at 478. In Zehr, the court stated:

> "We are of the opinion that essential to the qualification of jurors in a criminal case is that they know that a defendant is presumed innocent, that he is not required to offer any evidence in his own behalf, that he must be proved guilty beyond a reasonable doubt, and that his failure to testify in his own behalf cannot be held against him. If a juror has a prejudice

against any of these basic guarantees, an instruction given at the end of the trial will have little curative effect. *** We agree with the appellate court that '[e]ach of these questions goes to the heart of a particular bias or prejudice which would deprive defendant of his right to a fair and impartial jury' [citation], and although they need not have been asked in precisely the form submitted, the subject matter of the questions should have been covered in the course of interrogation on voir dire." (Emphasis added.) Zehr, 103 Ill. 2d at 477.

Accordingly, we concluded that the error "denied defendant a substantial right, undermined the fairness of his trial, and impacted the integrity of the judicial process." Blair, 395 Ill. App. 3d at 477.

Blair finds support in several recent decisions. For example, in People v. Blanton, No. 4--08--0120 (November 10, 2009), the court granted the State's petition for rehearing in light of the Glasper decision. The court held that Glasper did not alter its prior conclusion that the trial court's failure to question each venireperson as to whether he or she understood and accepted the fourth principle (particularly significant given that the defendant did not testify at trial) was reversible under the plain-error rule because the error was "so substantial it affected the fundamental fairness of the proceeding." Blanton, slip op. at 11. The court noted that Glasper specifically stated that it was not holding that a violation of Rule 431(b) would never constitute reversible error (Glasper, 234 Ill. 2d at 200). Blanton, slip op. at 15. Further, the court reiterated: "The principle involved here--that a defendant's failure to testify in his own behalf cannot be held against him--'is perhaps the most critical guarantee under our criminal process and [it] is vital to the selection of a fair and impartial jury that a juror understand this concept.' " Blanton, slip op. at 10-11, quoting People v. Brooks, 173 Ill. App. 3d 153, 158 (1988); see also People v. Graham, 393 Ill. App. 3d 268, 275-76 (2009) (court informed

venire of the four principles, but its failure to question and allow jurors to respond to each principle denied the defendant a substantial right and required new trial; in addition, the court found Glasper limited to the pre-2007 version of Rule 431(b)); People v. Madrid, 395 Ill. App. 3d 38, 48 (2009) (trial court's failure to fully comply with Rule 431(b) denied the defendant a substantial right and required a new trial); People v. Owens, 394 Ill. App. 3d 147, 153-54 (2009) (court informed prospective jurors of all four principles but did not question them on any of the principles; plain error requiring reversal due to "a complete breakdown of the judicial process that undermines this court's confidence in the jury's verdict"); People v. Wilmington, 394 Ill. App. 3d 567, 574-75 (2009) (court informed venire of four principles, but its failure to question it about understanding and acceptance of the fourth principle denied the defendant the substantial right to a fair and impartial jury, requiring new trial; in addition, the court found Glasper limited to the pre-2007 version of Rule 431(b)); People v. Arredondo, 394 Ill. App. 3d 944, 955-56 (2009) (trial court's failure to fully comply with Rule 431(b) denied the defendant a substantial right and required a new trial).

Analysis under either prong of the plain-error doctrine requires consideration of the facts and circumstances of the particular case. See People v. Magallanes, No. 1--07--2826, slip op. at 30 (December 23, 2009). Thus, although other decisions have relied on Glasper to find that an alleged Rule 431(b) violation was not reversible under the plain-error rule, the facts of those cases were markedly different from those presented here. See, e.g., People v. Calabrese, No. 2--08--0208, slip op. at 32 (January 26, 2010) (no Rule 431(b) violation where court conveyed to venire all four principles and each juror provided opportunity to respond to questions concerning the principles); Magallanes, slip op. at 15 (court began the voir dire by instructing generally of all four principles, asked each prospective juror if he or she understood and accepted the first three principles, but failed

to question each prospective juror about the fourth principle); People v. Amerman, No. 3--08--0071, slip op. at 2-3 (December 7, 2009) (court apprised venire of three principles and asked prospective jurors whether they understood and accepted the first and second principles; defense counsel asked two prospective jurors a question regarding the third principle; jury informed of fourth principle in instructions after trial); People v. Alexander, No. 3--07--0915, slip op. at 2, 19 (November 30, 2009) (reconsidering prior opinion in light of Glasper and holding same result warranted, i.e., no reversible plain error where trial court informed the potential jurors during voir dire of all four principles, but did not specifically ask them if they understood and accepted those principles); People v. Vargas, No. 1--08--0383, slip op. at 9-10 (November 20, 2009) (rejecting defendant's argument that the court did not sufficiently comply with Rule 431(b) with respect to fourth principle where it asked the venire whether it understood and accepted that the defendant did not have to testify on his own behalf and that the failure to do so should not be considered by jury and it stated "if you will not promise me that, please raise your hand"); People v. Russell, No. 3--08--0051, slip op. at 23 (November 18, 2009) (no reversible plain error where each of the four principles was touched upon by the trial judge or by counsel during the selection process); People v. Stump, 385 Ill. App. 3d 515, 521-22 (2008) (court found no reversible plain error where during voir dire trial court presented the four principles as admonitions and questioned each juror about two principles; our supreme court vacated this decision and remanded the case for reconsideration in light of Glasper, but a new decision has not yet been published).

The facts of this case are more egregious than those considered in the aforementioned cases. Indeed, they are more egregious than those considered by our court in Blair. With the exception of Amerman, in the aforementioned cases where no reversible plain error was found, the trial court at

least touched upon all four principles during the selection process. Here, the court failed to even inform the prospective jurors that: (1) defendant was not required to present any evidence; and (2) defendant's failure to testify could not be held against him. The court (and the assistant State's Attorney and defense counsel) never asked the prospective jurors whether they understood and accepted these principles. The court mentioned those principles only after the jury was impaneled and sworn, immediately preceding the trial's commencement, i.e., when all questioning was over. "The point of questioning is to determine whether any juror holds a belief making him or her unqualified to sit on a jury." Owens, 394 Ill. App. 3d at 153. We note that, although such an instruction would not cure the error (see Zehr, 103 Ill. 2d at 477), the jury was not even instructed after trial ended and before its deliberations began that defendant's failure to testify could not be held against him. See Glasper, 234 Ill. 2d at 200-01 (jury might not be biased despite Rule 431(b) violation if admonished and instructed not to form adverse inferences against a defendant based upon his decision not to testify). We agree with defendant that these omissions might have held particular significance here where he did not testify or present any other evidence on his behalf. Thus, we conclude that the court's Rule 431(b) violation undermined the fairness of defendant's trial and impacted the integrity of the judicial process. We reverse defendant's convictions and (for the reasons that follow) remand for a new trial on only the DUI, transportation of open alcohol, and obstruction charges.

### B. Sufficiency of the Evidence

Because we are remanding for a new trial, we must consider defendant's argument as to whether the evidence was sufficient to prove his guilt beyond a reasonable doubt. People v. Fornear, 176 Ill. 2d 523, 535 (1997). Defendant agrees that there was sufficient evidence to support the jury's

verdict on three charges, but he argues that the State failed to prove beyond a reasonable doubt that he committed the crime of improper lane usage. He notes that the indictment charged that he "knowingly drove a vehicle upon a roadway divided into two or more clearly marked lanes and [he] failed to drive the vehicle as nearly as practicable entirely within a single lane and moved from such lane before ascertaining that such movement could be made with safety." See 625 ILCS 5/11--709(a) (West 2004). The jury was instructed that, to find defendant guilty of improper lane usage, it must find proved beyond a reasonable doubt: (1) that defendant drove a vehicle on a roadway that was divided into two or more clearly marked lanes for traffic; and (2) that when he did so, defendant did not drive as nearly as practicable entirely within a single lane. However, defendant argues, there was no evidence presented at trial reflecting that he did not drive as nearly as practicable entirely within a single lane. Nor was there evidence that he changed lanes before ascertaining that it was safe to do so. Rather, defendant argues, the evidence reflected only that he drove in the wrong direction and, at Nadr's direction, drove onto the exit ramp to stop his vehicle. Defendant suggests that a charge under section 11--701 of the Illinois Vehicle Code, which prohibits driving on the wrong side of the road (625 ILCS 5/11--701 (West 2004)), would have been more appropriate.

When a defendant challenges the sufficiency of the evidence supporting his or her conviction, the inquiry is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. People v. Collins, 214 Ill. 2d 206, 217 (2005). It is the function of the trier of fact to weigh and resolve conflicts in the evidence and draw reasonable inferences therefrom. People v. Williams, 193 Ill. 2d 306, 338 (2000). A criminal conviction may be based upon circumstantial evidence, as long as it satisfies proof beyond a reasonable doubt of the charged offense. People v. Hall, 194 Ill. 2d 305, 330

(2000). We will not overturn a defendant's conviction as based on insufficient evidence "unless the proof is so improbable or unsatisfactory that a reasonable doubt exists as to the defendant's guilt." Williams, 193 Ill. 2d at 338.[2]

The State argues that the evidence was sufficient because section 11--709 is within article VII of chapter 11 of the Vehicle Code, entitled "Driving on Right Side of Roadway--Overtaking and Passing, Etc." 625 ILCS 5/11--701 et seq. (West 2004). Thus, the State contends that the obligation to drive a vehicle on the right side of the roadway is a controlling duty and it therefore terms "absurd" defendant's suggestion that he was not improperly using the lane when he was driving as nearly as practicable within a lane of oncoming traffic. But defendant does not dispute that he was improperly driving in the wrong direction and that the evidence was sufficient to so establish. He does not claim that he was driving "properly." Rather, defendant's argument is that he was charged with violating the requirements that he: (1) drive as nearly as practicable entirely within one lane; and (2) not move a vehicle from a lane before determining that the movement may be done safely. See People v. Smith, 172 Ill. 2d 289, 296-97 (1996). Here, he argues, the State provided no evidence to establish that he did not meet those requirements. We agree.

We reject the State's argument that the evidence was sufficient for the jury to reasonably infer that defendant violated both requirements because "wherever [he] crossed" from "the right-hand lanes

---

[2] We reject defendant's assertion that our review is de novo; the cases upon which he relies (People v. Lamborn, 185 Ill. 2d 585, 590 (1999), and People v. Banuelos, 345 Ill. App. 3d 970, 972 (2004)) applied de novo review because the sufficiency claims involved the interpretation of statutes. Here, we need not interpret the meaning of the statute but, rather, consider whether the evidence met the statute's elements.

onto the wrong side of a highway divided by a 10 foot grassy median" into oncoming traffic, he did so by not staying as nearly as practicable within his right-hand lane and without determining that the move could be safely made. There was no evidence establishing where or how defendant wound up driving the wrong direction, whether he was swerving outside of his lane when doing so, or whether he ever changed lanes. The evidence showed only that he drove in the wrong direction and that he pulled over onto the ramp when directed to do so. There was simply no evidence to establish beyond a reasonable doubt that defendant did not drive as nearly as practicable within the lane or that he changed lanes without determining that the move could be done safely. Thus, we reverse defendant's improper-lane-usage conviction.

### III. CONCLUSION

For the foregoing reasons, defendant's convictions and sentence are reversed. We remand the cause for a new trial on the DUI, transportation of open alcohol, and obstruction charges.

Reversed and remanded.

O'MALLEY, J., concurs.

JUSTICE SCHOSTOK, concurring in part and dissenting in part:

For the same reasons set forth in my dissent in People v. Blair, 395 Ill. App. 3d at 486-88, I believe that where a defendant does not object to the trial court's failure to strictly comply with Rule 431, the defendant is entitled to relief under the plain-error doctrine only if the evidence was closely balanced. I note that my dissent in Blair is consistent with several decisions that have been issued since Blair. See People v. Magallanes, No. 1--07--2826 (December 23, 2009); People v. Amerman, No. 3--08--0071 (December 7, 2009); People v. Alexander, No. 3--07--0915 (November 30, 2009). Here, as the majority correctly sets forth, the evidence in this case was not closely balanced. Thus,

the defendant is not entitled to any relief due to the trial court's lack of compliance with Rule 431. Based on the resolution of this issue, I would therefore address the defendant's contentions as to whether the case should be remanded for a fitness hearing as well as for a hearing on his pro se motion alleging ineffective assistance of counsel.

I concur, however, with the majority's determination that the State failed to prove beyond a reasonable doubt that the defendant was guilty of improper lane usage.