No. 2-08-0889     filed: 8-6-10

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 07--CF--3086 |
| UDELL T. ROGERS, | ) ) | Honorable Robert J. Anderson, |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE ZENOFF delivered the opinion of the court:

Following a jury trial, defendant, Udell T. Rogers, was convicted of criminal sexual assault of a family member under 18 years of age (720 ILCS 5/12--13(a)(3) (West 2008)). He was sentenced to 10 years' imprisonment. On appeal, defendant argues that the trial court committed reversible error by failing to comply with Supreme Court Rule 431(b) (Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007) in that it did not ask each potential juror whether he or she understood and accepted each of the four key principles of criminal trials. For the reasons that follow, we affirm.

BACKGROUND

On January 15, 2008, defendant was indicted on three counts of criminal sexual assault for knowingly committing acts of sexual penetration with his minor stepdaughter, S.S. Count I alleged that defendant placed his penis in the sex organ of S.S.; count II alleged that defendant placed his

mouth on the sex organ of S.S.; and count III alleged that defendant placed his penis in the mouth of S.S.

Following a jury trial, defendant was convicted of count I and acquitted of counts II and III. The trial court denied defendant's motion for a new trial and sentenced him to 10 years' imprisonment followed by a term of mandatory supervised release of 3 years to life. After the denial of his motion to reconsider sentence, defendant timely appealed.

## ANALYSIS

Defendant argues that he was denied his right to a fair and impartial jury as guaranteed by the sixth and fourteenth amendments to the United States Constitution and article I, section 8, of the Illinois Constitution, when the trial court failed to fully comply with the requirements of Rule 431(b). Defendant acknowledges that he did not preserve this issue for appellate review, but urges us to consider it under the plain-error doctrine. The State concedes that the trial court did not fully comply with Rule 431(b), but maintains that defendant did not overcome his forfeiture because he has not established reversible plain error.

The plain-error doctrine is an exception to the general rule of forfeiture, and we invoke it only when necessary to protect a defendant's right to a fair, though not a perfect, trial and to protect the integrity of the judicial process. See People v. Herron, 215 Ill. 2d 167, 177 (2005). We may review an otherwise forfeited issue when either (1) "the evidence in a case is so closely balanced that the jury's guilty verdict may have resulted from the error and not the evidence" or (2) "the error is so serious that the defendant was denied a substantial right, and thus a fair trial." Herron, 215 Ill. 2d at 178-79. The defendant bears the burden of persuasion under both prongs. Herron, 215 Ill. 2d at 187. The defendant must show that the "error caused a severe threat to the fairness" of the trial.

(Emphasis in original.) People v. Hopp, 209 Ill. 2d 1, 12 (2004); see also People v. Keene, 169 Ill. 2d 1, 17 (1995) ("Essentially, the fairness of the trial must be undermined"). The threshold question in plain-error analysis is whether error occurred. People v. Blair, 395 Ill. App. 3d 465, 467 (2009), citing People v. Naylor, 229 Ill. 2d 584, 593 (2008).

Defendant contends that error occurred when the trial court failed to comply with Rule 431(b). Rule 431 governs voir dire and was amended in 1997 to codify the decision in People v. Zehr, 103 Ill. 2d 472 (1984), which held that "essential to the qualification of jurors in a criminal case is that they know that a defendant is presumed innocent, that he is not required to offer any evidence in his own behalf, that he must be proved guilty beyond a reasonable doubt, and that his failure to testify in his own behalf cannot be held against him." Blair, 395 Ill. App. 3d at 468, quoting Zehr, 103 Ill. 2d at 477. In its original form, Rule 431(b) required a trial court to admonish and question prospective jurors on what are now known as the Zehr principles only when requested by a defendant. Blair, 395 Ill. App. 3d at 469. Amended in 2007, Rule 431(b) now imposes an affirmative obligation on trial courts to do so. People v. Schaefer, 398 Ill. App. 3d 963, 967 (2010). In its entirety, the rule provides:

> "The court shall ask each potential juror, individually or in a group, whether that juror understands and accepts the following principles: (1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that the defendant's failure to testify cannot be held against him or her; however, no inquiry of a prospective juror shall be made into the defendant's failure to testify when the defendant objects.

The court's method of inquiry shall provide each juror an opportunity to respond to specific questions concerning the principles set out in this section." Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007.

Defendant argues that the trial court erred when it failed to ask 11 of the 12 empaneled jurors if they understood any of the Zehr principles and failed to question 10 of them about Rule 431(b)(3)--that defendant was not required to offer any evidence on his own behalf.

The record reveals that, in its opening remarks to the entire venire on the afternoon of June 17, the trial court instructed all of the prospective jurors on each of the four Zehr principles. Thereafter, 12 prospective jurors were called to the jury box for voir dire in two panels of six each. While the trial court addressed the first panel (those six seated in the front of the jury box), the second panel sat in the back of the jury box. The entire venire was still present in the courtroom.[1]

The trial court specifically addressed the first panel with respect to Rules 431(b)(1), (b)(2), and (b)(4) by telling those potential jurors that defendant was presumed to be not guilty, that the State had to prove defendant guilty by proof beyond a reasonable doubt, that defendant did not have to testify, and that if defendant chose not to testify the jurors could not hold it against him. The court

---

[1]The report of proceedings contains no indication that the venirepersons not called to the jury box were excused. When prospective jurors from each of the panels were later excused, new prospective jurors were immediately called from the venire to the jury box. When one group was called after four persons from panel 2 had been excused, the court stated, "And, again, you've seen this process--sorry, you've seen this process before," indicating that the venire had been present during the entire voir dire. At the end of voir dire, after selection of the two alternate jurors, the court thanked and excused the entire venire, which was still in the courtroom.

also asked each member of the first panel whether he or she had any "quarrel or disagreement" with any of those three principles. Each member responded in the negative. Thereafter, the State questioned the first panel and asked to excuse one member, who then left the courtroom. The court then called another person (Juror A) from the venire to the jury box. The court instructed Juror A on all four of the Zehr principles and inquired whether Juror A had any quarrel or disagreement with any of those four principles, to which Juror A responded that he did not. The State accepted the first panel.

The record indicates that the entire venire returned the next morning and that those who had been in the jury box were again seated there. Defendant questioned the members of the first panel and excused one member, who then left the courtroom. The trial court called another person from the venire (Juror B) to be seated in the front of the jury box with the first panel. The trial court instructed Juror B on the presumption of innocence (Rule 431(b)(1)) and Juror B indicated that he had no quarrel or disagreement with it. Upon further questioning by the court, Juror B replied that he understood that the State was required to prove defendant's guilt and that defendant did not have to prove his innocence and that he had no quarrel or disagreement with those principles. Juror B also indicated that he could follow the court's instruction not to hold it against defendant if he chose not to testify. The court then asked Juror B if there was any reason he could not be fair and impartial, and Juror B said there was not. After questioning Juror B, defendant accepted the first panel. The State then questioned Juror B, including asking whether Juror B would sign a guilty verdict form if he were convinced of defendant's guilt "beyond a reasonable doubt." The State then accepted the first panel. The court administered the oath to the first panel and directed it to wait in the jury room.

After the first panel left the courtroom, the trial court questioned the second panel, the six people who had been sitting in the back of the jury box. Each member of the second panel indicated that he or she had no quarrel or disagreement with the principles of Rules 431(b)(1) and (b)(2) and would be able to follow Rule 431(b)(4). The trial court then inquired whether, after hearing all the questions, there was any reason that the panel members could not be fair and impartial. Each member answered in the negative. The State then questioned the second panel and accepted it. After defendant questioned the second panel, he excused four of its members, who left the courtroom.

The trial court then called four more persons from the venire to be seated with the second panel in the jury box. These four prospective jurors indicated that they had no quarrel with the principles of Rules 431(b)(1) and (b)(2) and that they could follow Rule 431(b)(4). The trial court then asked these four if there was any reason that had not been discussed why they could not be fair and impartial; each responded in the negative.

Thereafter, upon agreement of the parties, the trial court excused one of the four new panel members. After calling, and ultimately excusing, three more members of the venire, the trial court called Juror C. The trial court questioned Juror C, as it had the majority of the prospective jurors, about Rules 431(b)(1), (b)(2), and (b)(4) and whether there was any reason he could not be fair and impartial. After questioning Juror C, the State and defendant accepted the second panel. The second panel was sworn in and left the courtroom while two alternates were selected in a similar fashion.

The record establishes that the trial court failed to question all but Juror B about their understanding (as opposed to acceptance) of the Zehr principles and all but Jurors A and B regarding Rule 431(b)(3) (the principle that defendant need not present any evidence).[2] The trial court's failure

---

[2]The trial court expressly questioned Juror A on the principle that defendant need not present

to fully comply with Rule 431(b) constituted error. See People v. Willis, No. 1--08--2609, slip op. at 9 (May 21, 2010) (holding that error occurred where the trial court failed to question any of the prospective jurors about Rule 431(b)(3)); Blair, 395 Ill. App. 3d at 476 (the trial court's failure to fully comply with Rule 431(b) constituted error). We must now determine whether that error rises to the level of reversible plain error.

Defendant makes no argument that the evidence was closely balanced under the first prong of the plain-error doctrine. Rather, he contends that, under the second prong, the trial court's error was so serious that it resulted in the denial of his substantial right to a fair and impartial jury and thus requires reversal.

The right at issue here is the right to a fair and impartial jury. Voir dire promotes that right "by allowing the court and the parties 'to ascertain sufficient information about prospective jurors' beliefs and opinions so as to allow removal of those members of the venire whose minds are so closed by bias and prejudice that they cannot apply the law as instructed.' " Blair, 395 Ill. App. 3d at 477-78, quoting People v. Cloutier, 156 Ill. 2d 483, 495-96 (1993). Rule 431(b)'s mandate to include the Zehr principles in the voir dire helps to ensure against jury bias regarding the four bedrock principles of our criminal justice system. See Blair, 395 Ill. App. 3d at 478. We look to the facts and circumstances of the case before us to determine whether defendant has demonstrated that the trial court's failure to conduct voir dire in full compliance with Rule 431(b) compromised his right to a fair and impartial jury and thereby caused a severe threat to the fairness of his trial. See Hopp, 209 Ill. 2d at 12 (under the plain-error doctrine, the defendant bears the burden of showing a severe threat

_____

any evidence, pursuant to Rule 431(b)(3). The court questioned Juror B regarding his acceptance and understanding of the fact that defendant did not "have to prove [his] innocence."

to the fairness of the trial); Schaefer, 398 Ill. App. 3d at 971 (under either prong of plain error, we look to the facts and circumstances of the case before us); Blair, 395 Ill. App. 3d at 479, 482 (holding that "[g]iven the manner in which voir dire was conducted ***, this purpose was not achieved" and the defendant's right to a fair and impartial jury was compromised).

Essentially, defendant asserts two claims of error under Rule 431(b). Initially, he contends that the trial court failed to ask 11 of the 12 jurors if they understood each of the four Zehr principles, as opposed to whether they accepted (had any quarrel or disagreement with) the principles. As noted above, we agree with defendant that this omission constituted error. However, defendant makes no argument in his briefs as to how the trial court's failure to question 11 of the prospective jurors about their understanding of the Zehr principles compromised his right to a fair and impartial jury.[3] Accordingly, defendant's contention is forfeited. See Pederson v. Mi-Jack Products, Inc., 389 Ill. App. 3d 33, 44 (2009) (failure to provide argument in support of contention on appeal violates Supreme Court Rule 341(h) (210 Ill. 2d R. 341(h)) and results in forfeiture).

Nonetheless, the jurors indicated that they could follow the admonitions and strictures that the judge related. Since they indicated that they could follow them, it is reasonable to conclude that they had sufficient understanding to comply with them. Furthermore, all members of the second panel, including those later called from the venire, had been present when the trial court questioned Juror B about his understanding of the fact that defendant did not have to prove his innocence. Therefore, all members of the second panel were aware that understanding the principles was important. The trial court then specifically asked five members of the second panel who were

---

[3]As we discuss below, at oral argument defendant clarified his position--that any failure to fully comply with Rule 431(b) constitutes structural error, which is automatically reversible.

ultimately selected if there was any reason that each of them could not be fair and impartial. Although a lack of understanding would have been such a reason, all indicated that there was none.

Moreover, the reports of proceedings from the jury selection as a whole demonstrate that, had any of the prospective jurors not understood any of the principles, the atmosphere of the voir dire was such that he or she could have asked. Indeed, during the State's questioning of the second panel of prospective jurors, one of the panel members interrupted the process to inform the court that he might have given an incorrect response to one of the questions posed. This indicates that had any of the prospective jurors not understood something, he or she had the freedom to respond during voir dire. On this record, the court's omission regarding potential jurors' understanding of the Zehr principles did not compromise defendant's right to a fair and impartial jury.

Defendant next contends that the trial court's failure to question 10 of the 12 empaneled jurors about the principle in Rule 431(b)(3), that defendant was not required to present any evidence, denied him the right to a fair and impartial jury. We disagree. Defendant not only testified on his own behalf, but also called his wife to testify. Given these facts, the trial court's omission could not have seriously compromised defendant's right to a fair and impartial jury. See Willis, slip op. at 14 (analyzing under the second prong of plain error and holding that the defendant was not deprived of a fair trial by the trial court's failure to comply with Rules 431(b)(3) and (b)(4) because the "defendant presented evidence through his own testimony").

Nonetheless, defendant argues that, because the jurors were not questioned about the fact that he was not required to present evidence, they might have thought that he was required to present physical evidence or something other than testimony. According to defendant, this was especially true since the State presented numerous exhibits and four expert witnesses.

Defendant's argument is belied by the record. In addressing the venire, the trial court explained, "[Defendant] doesn't have to say anything, do anything, or prove anything at this trial." After explaining and reading the indictment, the trial court instructed the venire as to how the process of the trial would unfold. The court then stated:

> "[Defendant], as I told you, does not have to present any evidence. He doesn't have to prove anything here. The State has to prove his guilt and they have got to do that by proof beyond a reasonable doubt.
>
> Right now he is presumed to be not guilty. The State has to prove him guilty, if they are capable of doing so, by proof beyond a reasonable doubt. So [defendant] doesn't have to put on any evidence of any kind." (Emphasis added.)

The court then addressed the principle of Rule 431(b)(4), that defendant was not required to testify and that if he chose not to testify, it could not be held against him. The court went on to instruct the venire on the different types of evidence:

> "In any event, evidence is presented during the course of the trial in several different ways. Most commonly, it's from testimony from the witness stand. Occasionally, there are what are called stipulations where the parties agree that something is evidence. ***
>
> And, finally, sometimes exhibits that are introduced into evidence during the course of the trial."

The jury was clearly instructed that defendant did not need to do anything; that there are different types of evidence, with testimony being the most common; and that defendant did not need to present evidence of any kind. On this record, despite the trial court's failure to question the prospective jurors on the principle that defendant was not required to present evidence, defendant

has not demonstrated that the jury was likely to believe that he was required to present evidence other than testimony.

Furthermore, the trial court here instructed the jury, at the close of trial and before its deliberations began, that defendant was not required to prove his innocence. Although the trial court cannot cure its Rule 431(b) error by giving jury instructions at the end of trial (see Zehr, 103 Ill. 2d at 477 (jury instruction will have "little curative effect" if a juror has a prejudice)), such instructions can ameliorate any potential unfairness resulting from the error (see People v. Glasper, 234 Ill. 2d 173, 201 (2009) (holding no evidence of jury bias was shown, especially where jury was both admonished and instructed)). We also note that the jury acquitted defendant of two of the three offenses for which he was tried. Had the jury been biased, this result would have been unlikely. Accordingly, defendant has not established that his right to a fair and impartial jury was compromised.

Defendant urges us to follow our recent holding in Blair and reverse his conviction. Defendant asserts that our holding there was that a violation of Rule 431(b) is plain error impacting a defendant's right to a fair and impartial jury and, thus, is not subject to a harmless-error analysis. During oral argument, defendant took the position that the trial court's failure to fully comply with Rule 431(b) constituted structural error and is therefore per se reversible under Blair. We disagree with defendant's statement of our holding in Blair.

In Blair, while the trial court told the entire venire about all four of the Zehr principles, it failed to question all of the prospective jurors about all of the Zehr principles. Blair, 395 Ill. App. 3d at 473, 478. Voir dire was conducted in three panels. Blair, 395 Ill. App. 3d at 472. The trial court questioned the members of all three panels about the principle contained in Rule 431(b)(2)--that the State bears the burden of proof beyond a reasonable doubt. Blair, 395 Ill. App. 3d at 473-75. The

trial court did not question the first panel about any of the other three <u>Zehr</u> principles. <u>Blair</u>, 395 Ill. App. 3d at 473-74. The trial court questioned the second panel about its understanding of the principles in Rules 431(b)(3) and (b)(4) and its acceptance of the principle in Rule 431(b)(1). <u>Blair</u>, 395 Ill. App. 3d at 474-75. The third panel was additionally questioned about the principle in Rule 431(b)(1) and its understanding of the principles in Rules 431(b)(3) and (b)(4). <u>Blair</u>, 395 Ill. App. 3d at 475. The defendant testified. <u>Blair</u>, 395 Ill. App. 3d at 467.

Our analysis in <u>Blair</u> centered on the facts and circumstances of that case. Although we noted the "mandatory language of amended Rule 431(b)" (<u>Blair</u>, 395 Ill. App. 3d at 478) and the recent "trend of authority" (<u>Blair</u>, 395 Ill. App. 3d at 481, citing cases holding that a Rule 431(b) violation is reversible plain error not amenable to harmless-error review), had that been dispositive our analysis of the nature of the error would have been superfluous. We focused on the first panel, from which seven of the seated jurors were ultimately chosen, and examined the nature of the error at issue. <u>Blair</u>, 395 Ill. App. 3d at 474, 478. We pointed out that the trial court failed to ask all of the prospective jurors about all of the <u>Zehr</u> principles, but found it "[m]ore significant [that] the trial court failed to ask a majority of the jurors whether they understood and accepted three of the four <u>Zehr</u> principles." <u>Blair</u>, 395 Ill. App. 3d at 478. Under those facts, we observed that the purpose of <u>voir</u> <u>dire</u>--to allow the parties and the court to determine if any prospective juror had any particular bias or prejudice--was not fulfilled given "the manner in which <u>voir</u> <u>dire</u> was conducted." <u>Blair</u>, 395 Ill. App. 3d at 479. We reversed and remanded, concluding that the trial court's failure to fully comply with the mandate of Rule 431(b) with respect to a majority of the empaneled jurors "compromised defendant's right to a fair and impartial jury [citations] and impacted the integrity of the judicial process [citation]." <u>Blair</u>, 395 Ill. App. 3d at 482.

Despite our affirmance here and reversal in Blair, our holding in the present case is consistent with our holding in Blair, because of the difference in the facts and circumstances. Here, in contrast to Blair, a majority of the jurors was questioned about most of the Zehr principles--three of the four. Additionally, one of the jurors was questioned about all four of the Zehr principles in the presence of the other jurors. Furthermore, the trial court's error in Blair was even more egregious because the jurors there were not questioned about the bedrock principle of the presumption of innocence and the principle that the defendant was not required to present evidence--a principle with specific application to the defendant's case because he did not present evidence.[4] Under those facts, the purpose of voir dire was not achieved because there was no way to determine whether any juror harbored a bias with respect to either of those principles. Thus, in Blair, we concluded that the defendant's right to a fair and impartial jury was compromised. Whereas here, the only omitted principle (that defendant was not required to present evidence) was of no consequence to defendant's trial because he did present evidence.

Although we distinguish rather than rely on Blair, we address the State's argument that we should not rely on Blair because it followed the trend of authority now called into question by the vacation of People v. Anderson, 389 Ill. App. 3d 1 (2009), vacated, 233 Ill. 2d 565 (2009) (denying leave to appeal and instructing the appellate court to reconsider in light of Glasper). Since completion of the briefing in the instant case, however, the First District reissued its opinion in Anderson, which is substantially the same as the vacated version. See People v. Anderson, No. 1--07--1768, slip op. at 18 (March 29, 2010) ("The Glasper harmless error analysis is not appropriate under the facts of this case"). Therefore, the State's concern is moot.

---

[4]The defendant in Blair did, however, testify in his own behalf.

Finally, we observe that our holding is consistent with our more recent pronouncement in Schaefer. In Schaefer, we applied plain-error analysis and relied on Blair to reverse and remand where the trial court failed to fully comply with Rule 431(b). Schaefer, 398 Ill. App. 3d at 969. The trial court told and questioned the venire about the principles in Rules 431(b)(1) and (b)(2), but neither told nor questioned prospective jurors about the principles in Rules 431(b)(3) and (b)(4) (that the defendant was not required to present evidence and that the defendant's decision not to testify could not be held against him, respectively). Schaefer, 398 Ill. App. 3d at 964-65, 967. We noted that the trial court's error was more egregious than in Blair, particularly because in Schaefer the defendant did not present evidence or testify. Schaefer, 398 Ill. App. 3d at 972. We also observed that the trial court failed to even instruct the jury at the close of evidence, before it began deliberating, that the defendant's failure to testify could not be held against him. Schaefer, 398 Ill. App. 3d at 972. The facts and circumstances of Schaefer are even more different from the present case than is Blair. Thus, our holding here is consistent with Schaefer.

We decline defendant's invitation to conclude that all Rule 431(b) violations are structural errors requiring automatic reversal. The analyses in Blair and Schaefer do not support the determination that such errors are structural errors requiring automatic reversal, and our supreme court has yet to address the issue. Because defendant failed to demonstrate that the trial court's error compromised his right to a fair and impartial jury, he has not shown that the fairness of his trial was severely threatened, and therefore he has not demonstrated that reversible plain error occurred. See Hopp, 209 Ill. 2d at 12 (under the doctrine of plain error, the defendant bears the burden of showing a severe threat to the fairness of the trial). Accordingly, defendant has not overcome his forfeiture.

See <u>Naylor</u>, 229 Ill. 2d at 593 ("When a defendant fails to establish plain error, the result is that the 'procedural default must be honored' "), quoting <u>Keene</u>, 169 Ill. 2d at 17.

For the reasons given, we affirm the judgment of the circuit court of Du Page County.

Affirmed.

McLAREN and HUTCHINSON, JJ., concur.